GLENN MYERS ET AL V. ARAH CRENSHAW ET AL.

No. 7448. Decided March 6, 1940.
(137 S. W., 2d Series, 7.)

*Paul E. Daugherty,* and *E. E. Fischer* of Houston, and *Smith & West, Clifford Stone* and *Stone & Wells* of Henderson, *Jester & George,* of Corsicana, and *E. W. Merritt,* of McKinney, for plaintiffs in error.

Since the findings of the jury were in favor of the plaintiffs, its verdict was sufficient on its face to justify and require the rendition of a judgment in plaintiffs' favor for all the relief sought by them, and since none of the defendants filed in the trial court any motion requesting that special issues be disregarded and that judgment be rendered on the remaining findings of the jury, and since none of the defendants were entitled to a judgment non obstante veredicto, the trial court was without power or authority to disregard said special issue, and since the trial court and the Court of Civil Appeals have

both failed to render judgment in favor of plaintiffs for the relief sought by them, plaintiffs are entitled to a judgment in the Supreme Court. Hines v. Parks, 128 Texas 289, 96 S. W. (2d) 970; Waller v. Liles, 96 Texas 21, 70 S. W. 17; Miller v. Fenner, 89 S. W. (2d) 506.

*Brachfield & Wolfe*, of Henderson, *Mayfield, Grisham & Grisham, J. A. Lantz, Weeks, Hankerson & Potter, Charles F. Potter, Lasseter, Simpson, Spruiell & Lowry, A. A. Garrett* and *F. W. Fischer*, all of Tyler, *Paul A. McDermott*, of Fort Worth, and *Bradley & Bradley*, of Groesbeck, for defendants in error.

On the question of the right of the court to disregard the findings of the jury of the issue of dispute of title and have judgment entered non obstante veredicto, defendants in error cite: Lake v. Jones Lbr. Co., 233 S. W. 1011; Underwood v. Hogg, 261 S. W. 556; Shuler v. City of Austin, 201 S. W. 445.

MR. PRESIDING JUDGE SMEDLEY delivered the opinion of the Commission of Appeals, Section B.

The suit was filed by plaintiffs in error against many defendants to recover title and possession of an undivided one-fourth interest in the oil, gas and other minerals in a tract of land in Rusk County containing 25 acres, and for damages on account of oil produced and taken. In the trial court and in the Court of Civil Appeals the case was complicated by conflicting claims of many parties, but as presented here the case calls for the decision of one question of procedure and of two or three related or incidental questions. In district court, after trial with a jury, judgment was rendered that plaintiffs in error take nothing by their suit. The Court of Civil Appeals reversed that part of the trial court's judgment which denied recovery to plaintiffs in error and rendered judgment in their favor for an undivided one-fourth interest in the oil, gas and other minerals in the land, but made such judgment subject to the terms and provisions of an oil and gas lease which had been executed by Rufus Jones and wife to Roy H. Laird, and affirmed the trial court's judgment awarding leasehold estates under said lease to several of the defendants, who are defendants in error here. 116 S. W. (2d) 1125.

The writ was granted to plaintiffs in error Myers et al., who were plaintiffs in the trial court, and who seek reversal of that part of the judgment of the Court of Civil Appeals which made their recovery of the one-fourth interest in the minerals subject to the oil and gas lease. Plaintiffs in error contend that

the oil and gas lease, in so far as it affected their interests, terminated on September 11, 1933, for nonpayment of rentals, while the defendants in error, who have title under the lease, maintain that the lease did not terminate. A brief statement of some of the facts and of some of the proceedings in the trial court is essential to the consideration of the question of procedure upon which the case, as here presented, turns.

The twenty-five acre tract of land was conveyed on March 17, 1920, to Rufus Jones, at a time when he was married to his first wife, Arah Jones, the deed reciting a consideration of $625.00, of which $150.00 was paid in cash and the balance was evidenced by notes secured by vendor's lien expressly retained in the deed. Rufus Jones was divorced from his first wife, Arah, and thereafter, on September 11, 1930, leased the land for oil and gas to Roy H. Laird for a primary term of ten years. This lease contained the usual clause that, if drilling operations were not commenced within a year, the lease should terminate, unless the lessee should pay a stipulated rental, with provision for deferring annually thereafter the commencement of drilling operations by like payments of rentals during the primary term. The lease contained the following clause: "Should the right or interest of lessee be disputed by lessor, or any other person, the time covered by the pendency of said dispute shall not be counted against lessee either as affecting the term of the lease or the time for payment of rentals or royalties, or for any other purpose, and lessee may suspend all payments until there is a final adjudication or other determination of such dispute."

Rufus Jones and his second wife, on December 18, 1930, conveyed to B. F. Carroll an undivided one-half of the oil, gas and other minerals in the land, subject to the lease. Thereafter, on February 10, 1931, Rufus Jones and wife executed and delivered a deed conveying to Paul Daugherty an undivided one-fourth interest in the oil, gas, and other minerals in the land, subject to the lease. Plaintiffs in error through mesne conveyances are the owners of the title acquired by Daugherty under that deed.

When the time came for the payment of rental due under the terms of the lease on September 11, 1933, Warner-Quinlan Company of Texas was the owner, through assignments, of the leasehold estate. It failed to pay the rental when due, but did make payment a few days thereafter, three-fourths of the amount being paid to and accepted by Rufus Jones and one-fourth being paid to and accepted by Sun Oil Company, which had title under conveyance from B. F. Carroll. No part of the

rental was paid to Paul Daugherty or to anyone claiming under him.

Defendants in error, who deraign title to the leasehold interests claimed by them through and under assignments from Roy H. Laird, had on the trial two defenses against plaintiffs in error's suit. The first was that plaintiffs in error never acquired any interest in the minerals, because the tract of land was the community property of Rufus Jones and his first wife, Arah, and Rufus Jones by his conveyance of a one-half interest in the minerals to B. F. Carroll had exhausted all of his title or interest in the minerals before he made the deed to Daugherty under which plaintiffs in error claim. The second defense was that, even if Daugherty did acquire title to a one-fourth interest in the minerals, the title so acquired was subject to the oil and gas lease, which did not terminate, despite the tardy payment of the delay rental in 1933, because the title was in dispute when the time for the payment of that rental arrived.

Special issues bearing upon these defenses were, among other issues, submitted by the trial court to the jury. In answer to Issues Nos. 11 and 12, which relate to the first of the two defenses, the jury found that after the rendition of the divorce decree Arah Jones stated to Rufus Jones that she was not interested in the twenty-five acre tract of land and that she would not pay anything on the then unpaid vendor's lien notes given as part of the purchase price of the land, and that when Rufus Jones paid off the vendor's lien notes he was relying on the said statements made by Arah Jones. The ninth special issue had reference to the second defense presented by defendants in error. It was: "Do you find from a preponderance of the evidence in this case that there was a dispute concerning the title to the land in controversy in this lawsuit on September 11, 1933?" It was answered "No."

The judgment of the trial court that plaintiffs in error take nothing contains the recital that the court is of the opinion and finds that the evidence failed to show that the land or any interest therein was the separate property of Rufus Jones. The Court of Civil Appeals, however, reversed the trial court's judgment and rendered judgment in favor of plaintiff's in error for the undivided one-fourth interest, subject to the lease, gave effect to the jury's findings in answer to Special Issues Nos. 11 and 12, and held that by reason of the facts so found and other facts, which were undisputed, Arah Jones abandoned her title and was estopped to assert it. To that conclusion of the Court of Civil Appeals no error has been assigned.

There remains for consideration in this Court only the second of the two defenses made by defendants in error in the trial court. With respect to it the Court of Civil Appeals held that the lease did not terminate for failure to pay the rental due on September 11, 1933, because it was shown on the trial by undisputed evidence, which presented a question of law, that there was at that time disputes of serious character as to the lessee's title, such disputes being in part the basis of the present suit. Plaintiffs in error do not attack by any assignment of error in their application for writ of error the conclusion of the Court of Civil Appeals that the undisputed evidence shows that there were disputes as to the title on September 11, 1933, and nowhere in their application or in briefs filed in this Court do they set out, or refer to, any evidence contradictory of that discussed in the opinion of the Court of Civil Appeals as conclusively showing that there were such disputes concerning the title at that time. They rely upon the jury's answer to Issue No. 9 and contend that, on account of that finding and because of failure of defendants in error to file a motion, or a proper motion, under Article 2211 of the Revised Civil Statutes of 1925 (as amended by Chapter 77, Acts Regular Session, 42nd Legislature, 1931), asking the court to disregard the jury's answer to Issue No. 9 as having no support in the evidence, it was the duty of the trial court and of the Court of Civil Appeals to render judgment for plaintiffs in error for an undivided one-fourth interest in the oil, gas and other minerals in the land, free and clear of the oil and gas lease.

Article 2211 was amended in 1931 by the insertion of the following: "Provided, that upon motion and reasonable notice the Court may render judgment non obstante veredicto if a directed verdict would have been proper, and provided further that the court may, upon like motion and notice, disregard any Special Issue Jury Finding that has no support in the evidence." This amendment was carefully construed and discussed in Hines v. Parks, 128 Texas 289, 96 S. W. (2d) 970. In that case Mrs. Hines sued Parks for damages for breach of contract. The jury found in answer to one of several special issues that the consideration for the contract had failed. The only motion filed by plaintiff was one in which she asked the court to render judgment in her favor in accordance with the terms and form or substance of a form of judgment attached to her motion. That form, in addition to the usual recitals, set out verbatim all of the special issues and answers, including the issue as to failure of consideration and the answer thereto,

and concluded with an award to the plaintiff of the amount of damages fixed by the jury. There was nothing in the motion indicating that any issue should be disregarded because of having no support in the evidence. The trial court, nevertheless, entered judgment for the plaintiff in accordance with the form attached to her motion. It was held that "the court was without authority to enter any other judgment other than to declare a mistrial, or in conformity with the answer to the special issue in favor of the defendant."

Two reasons were given for the decision: that the motion filed by the plaintiff did not meet the requirements of the amendment to Article 2211 and that there was nothing in the record to show that the required "reasonable notice" was given. The court did not, in the Hines-Parks case, give a form for a motion to disregard a special issue because having no support in the evidence, and it did not prescribe, as plaintiffs in error contend, "minimum requisites" of such motion. It was held that the motion should be in writing, and as to the contents or substance of the motion, Judge German, who wrote the opinion, stated: "Such a motion, regardless of its form, would be sufficient if it designated the finding or findings which the court is called upon to disregard, the reason why same should be disregarded and contained a request that judgment be entered upon the remaining findings after the specified findings had been set aside or disregarded."

After careful consideration of the motions filed in the trial court by defendants in error, it is our opinion that there is in them sufficient compliance with Article 2211 as amended.

All of the defendants in the trial court joined in a motion, filed before the charge was given to the jury, in which they moved the court to instruct the jury to find for the defendants "as to all of the leasehold interest which is the 7/8 working interest in controversy in this case." In the first paragraph of the defendants' written objections to the court's charge they objected "to any charge given to the jury for the reason that the court should give an instructed verdict as requested and contained in the motions heretofore filed by defendants in this case."

On the 4th day of December, after the verdict was returned, all of the defendants filed a motion in which they moved the court to enter judgment in their favor non obstante veredicto, for the reason that "the findings of the jury are contrary to the law and the evidence, in that there was no evidence upon which to base the answers given by the jury to any of the

issues save and except special issue No. 10." There were in all sixteen issues submitted to the jury.

R. E. Moore, defendant in the trial court and defendant in error here, and who held a leasehold interest or estate through assignments under the Laird lease, filed, with other defendants before judgment was rendered, a motion in which he asked that the court render judgment that plaintiffs take nothing against defendants, notwithstanding the verdict of the jury, for a number of reasons, one of which was thus stated in the motion:

*"These defendants further say that they are entitled to judgment as against the plaintiffs as to the oil and gas leasehold estate,* for the reason that the oil and gas lease originally executed by Rufus Jones to Roy Laird and now owned by defendants, contains the provisions that should the title of Rufus Jones to the entire 25 acre tract be in dispute or questioned that there would be no obligation on the part of the lessee to pay rentals to any person, not even to Rufus Jones, during the time such dispute or controversy over the title existed and said lease providing that the lessee would not be obligated to pay rentals under the terms thereof unless and until such dispute or controversy was finally settled and adjudicated. *In this connection these defendants say that the uncontradicted evidence in this case shows that Arah Crenshaw was asserting a claim to an interest in the 25 acre tract of land as early as the latter part of 1931,* as shown by power of attorney executed by the said Arah Crenshaw to W. H. Grier, filed for record during the latter part of 1931, *and that Opal Gene Givens was asserting a claim to an interest in the 25 acre tract of land* as shown by powers of attorney and instruments of conveyance affecting said land executed by the said Opal Gene Givens to J. H. Merritt *in the early part of 1933,* as well as an oil and gas lease of record executed by the said Opal Gene Givens to B. G. Beckham; *that the Kennedy heirs were claiming an undivided interest in said 25 acre tract of land* as shown by power of attorney and instrument of conveyance executed to G. W. Morgan and filed for record *during the early part of 1933,* and all of said claims to an interest in said land being here and now involved in this lawsuit." (Our italics.)

Other paragraphs of the motion filed by Moore made reference to other special issues and the answers thereto and asserted that the answers were contrary to the uncontroverted evidence, setting it out.

Plaintiffs in error insist that the two motions filed by defendants in error were insufficient to authorize the trial court to disregard Issue No. 9 and the answer thereto and to render judgment in favor of the defendants who have interests under the lease. They take the position that the motions are motions for judgment notwithstanding the entire verdict and that they do not invoke the authority of the court, in rendering its judgment, to disregard Issue No. 9 and the answer to that issue as a jury finding without support in the evidence.

■ This contention is based upon the form of the motions rather than upon their substance. It is true that the language of the two motions at their beginnings and ends apparently designates them as a motion for judgment non obstante veredicto and a motion for judgment notwithstanding the verdict. It is also doubtless true that, exactly speaking and following the literal language of amended Article 2211, a motion non obstante veredicto means a motion for judgment notwithstanding the entire verdict. However, a motion under the second proviso of the amended article, to disregard one or more of the special issue jury findings, is of character like to that of a motion for judgment notwithstanding the entire verdict. It is a *motion for judgment notwithstanding a part of the verdict* and is often referred to as a motion for a judgment non obstante veredicto. See for example Traders & General Insurance Company v. Milliken, 110 S. W. (2d) 108.

Looking to the substance of the two motions, the first of them, that in which all of the defendants joined, is subject to objection as being too general and not setting out with particularity wherein or how the several issues referred to are not supported by veidence, but it does state that there is no evidence upon which to base the answers given by the jury to any of the issues except Issue No. 10, and in substance and meaning it asks the court for that reason to disregard all or any of the special issues, except Issue No. 10, and to render such judgment as should be rendered when the said issues or any of them are disregarded, in other words, in rendering its judgment to disregard the issue or issues that are without support in the evidence. The .motion does not point out Issue No. 9 by number but it designates all of the issues, except Issue No. 10, and presents the contention that all of the sixteen findings of the jury, except that made in answer to Issue No. 10, should be disregarded.

■ It is unnecessary to determine whether the first of the two motions is sufficient of itself for compliance with amended

Article 2211. It may be read in connection with, and may be aided by, the second of the two motions, that filed by defendant Moore. He and the other defendants holding assignments under the lease had and were making common defense against plaintiffs who claimed that the lease had terminated. Both motions, after the notice to plaintiffs, were presented to the court at the same time and the court in sustaining the quoted paragraph of Moore's motion would disregard the finding made in answer to Issue No. 9 and render judgment for plaintiffs for a one-fourth interest in the minerals but subject to the terms of the lease.

■ The paragraph of Moore's motion above quoted does not describe Issue No. 9 by number but the subject matter of the paragraph clearly designates that issue and unmistakably has reference to it and to no other issue. It sets out the clause of the lease with respect to disputes as to title, asserts that the uncontradicted evidence shows the pendency of three disputes concerning the title at the particular time, gives the nature of the disputes and the manner in which the claims have been asserted and alleges that the defendants are entitled to judgment against the plaintiff "as to the oil and gas leasehold estate." This paragraph of Moore's motion, therefore, designates Issue No. 9 and the answer thereto as a finding which should be disregarded, gives the reason why it should be disregarded, which is that it is contrary to the undisputed evidence, and requests that judgment be rendered against the plaintiffs as to the leasehold estate, which of course means a judgment disregarding that finding.

Greater care in practice would have directed defendants in error to file two motions (or one motion containing distinctly separated grounds and prayers), the first in furtherance of their first defense, that plaintiffs had never acquired any interest in the minerals, and the second in furtherance of their second defense, that the disputes as to title saved the lease from termination. One motion would have been for judgment notwithstanding the entire verdict, as authorized by the first proviso of the statute, and the other motion would have been for the entry of judgment after disregarding Special Issue No. 9, as authorized by the second proviso. But we are unwilling to disregard the substance of the motion on account of imperfection in form. The trial judge who read the two motions could not fail to understand that defendants in error were asking that the finding in answer to Special Issue No. 9 be disregarded because not supported by evidence.

Plaintiffs in error advance three other reasons in support of their contention that defendants in error may not on appeal be heard to complain of the jury's answer to Special Issue No. 9 as having no support in the evidence: (1) because defendants in error requested the trial court to submit a special issue substantially the same in form and substance as Issue No. 9; (2) because some of the defendants in error made a motion for judgment based on the verdict; and (3) because defendants in error failed to file in the Court of Civil Appeals an assignment of error attacking Special Issue No. 9 as not supported by evidence.

The first of these three positions would be well taken but for the amendment in 1931 of Article 2190 of the Revised Civil Statutes of 1925, (Acts Regular Session, 42nd. Legislature, Chapter 78). Prior to its amendment that article provided that "a claim that the testimony was insufficient to warrant the submission of an issue may be complained of for the first time after verdict." By the decisions the right to make such complaint after verdict was denied to a party who had requested the submission of the issue. Haynes v. Taylor, (Com. App.) 35 S. W. (2d) 104. The amendment made in 1931 changed the last sentence of Article 2190 to read: "A claim that the evidence was insufficient to warrant the submission of any issue may be complained of for the first time after verdict, regardless of whether the submission of such issue was requested by the complaining party." Thereby the right to complain after verdict that the evidence was insufficient to warrant the submission of an issue was extended to a party who had requested the submission of the issue.

██ The amendment of Article 2211 hereinbefore discussed and the amendment of Article 2190 were made at the same session of the Legislature and were approved by the governor on the same day, being parts of legislation, as stated in the emergency clauses of the two acts, to simplify court procedure. They should be read together. When so read they authorize the trial court, on motion of a party who has requested the submission of a special issue, to disregard the jury's finding in answer to the issue "when the finding has no support in the evidence." The phrase last quoted is used in the amendment of Article 2211, while the phrase used in the amendment of Article 2190 is "a claim that the evidence was insufficient to warrant the submission of any issue." The two phrases have reference to the determination by the court after verdict of a question of law, that is, the absence of evidence to raise an issue or to

support a finding. The court is authorized after verdict, on proper motion, to disregard a finding that has no support in the evidence and the party is permitted to make complaint after verdict that the evidence was insufficient to warrant the submission of the issue, which of course is but another way of saying that there was no evidence to raise the issue. It is apparent that the word "insufficient" in the amendment of Article 2190 is not used in the factual sense of insufficiency to support a finding which the jury has made. Defendants in error, in their motions which have been discussed, complained after verdict that there was no evidence to support the jury's answer to Issue No. 9, which necessarily is the equivalent of complaining that the evidence was insufficient to warrant the submission of the issue to the jury. The procedure followed was authorized by the statute.

■ The record shows that some of the defendants, after the verdict was returned, filed informal motions praying the court to enter judgment in their favor. When these motions were filed there was on file the motion for judgment notwithstanding the verdict filed by all of the defendants on December 4, 1935, and which has been above discussed. The trial court's judgment contains a recital overruling all motions for judgment on the verdict filed by plaintiffs, intervenors and defendants "in so far as the judgment herein rendered may be in conflict, if at all, with the findings of the jury." The judgment then recites the hearing, after notice, and the consideration by the court of, the motions of the defendants that plaintiffs take nothing, and the finding of the court that the evidence failed to show that the land in controversy was the separate property of Rufus Jones. These recitals are followed by the court's order on said motions in the following language: "And if the findings or any one or more of the findings of the jury are contrary to such finding by the court, to such extent the finding or findings of the jury is set aside and judgment herein rendered notwithstanding such finding." It was thereupon ordered, adjudged and decreed that the plaintiffs take nothing. Such being the record, we do not believe that the defendants in error who filed the informal motions for judgment after the verdict may be said to have waived or abandoned their motions in which they asked the court to disregard certain findings of the jury and to enter judgment in their favor or that they should be estopped from asserting on appeal that the finding made in answer to Special Issue No. 9 was not supported by the evidence. The case is not one like those cited by plaintiffs in error in which the parties filed motions for judgment on the

verdict without making any attack upon the findings of the jury. Here the defendants in error by their motion for instructed verdict, by their objection to the court's charge, and by their motions asking the court to disregard the jury's answers to certain issues, including Issue No. 9, and the presentation of those motions to the trial court, were continuing to insist upon their contention that, according to the undisputed evidence showing the existence of disputes as to title, the lease had not terminated.

As is shown by the foregoing statement with respect to the trial court's judgment and the quotations from it, the trial court made no express ruling either granting or overruling defendants in error's motions in so far as they asked the court to disregard the jury's answer to Issue No. 9. The judgment rendered was that the plaintiffs take nothing, based upon the trial court's finding that the evidence failed to show that the land was the separate property of Rufus Jones. The question whether a recovery of title by the plaintiffs should be subject to or free from the lease was never reached and never decided by the trial court, because it held that the plaintiffs were entitled to recover nothing at all. It cannot be said that the trial court's judgment is to any extent or in any particular inconsistent with a conclusion that there was no evidence to support the answer to Issue No. 9, or that any implication can arise from the judgment that the court would have found, if it had passed on that question, that there was evidence to support that special issue finding. It seems apparent, therefore, that there was no occasion for defendants in error to file a cross assignment of error relating to Issue No. 9. What error against them did the trial court make? Its judgment was more favorable to them than if it had sustained their motion only to the extent of disregarding Special Issue Finding No. 9.

■ If, however, a cross assignment of error was necessary, we believe that the point was presented to the Court of Civil Appeals, with enough formality to justify that court in considering it, by the sixth cross assignment of error and the first counter proposition contained in the briefs of defendants in error Beren and Wiley filed in that court. The cross assignment of error and proposition submitted to the Court of Civil Appeals for decision the contention consistently made by defendants in error, and sustained by that court, that, as shown by the undisputed evidence, there existed disputes as to the title, by reason of which the lease did not terminate for non-payment of rental.

The judgment of the Court of Civil Appeals is affirmed.

Opinion adopted by the Supreme Court March 6, 1940.