**TOWNSLEY v. TOWNSLEY.**

**No. 14073.**

Court of Civil Appeals of Texas. Dallas.

May 20, 1949.

Rehearing Denied July 8, 1949.

Yale B. Griffis, Dallas, for appellant.

J. Meek Hawkins and Pliny V. Myers, both of Houston, for appellee.

CRAMER, Justice.

This is an appeal from a decree of the trial court which refused appellant a divorce and granted appellee a divorce on a cross-action; also partitioned real property of the parties, one-half to each party; also disposed of the personal property. The only assignment is directed to that portion of the judgment which so partitioned the real property.

It is undisputed that the parties consummated a common-law marriage in 1929; that such marriage was dissolved by divorce decree in 1944; that during that marriage the two pieces of real estate involved here were acquired; that the decree in 1944 did not partition such property; and that about two years after such decree, in 1946, appellant secured two quitclaim deeds from appellee, one for each piece of property, the recited consideration in one deed being $1, and in the other $200. Appellee and appellant remarried in 1947. On the hearing here appealed from appellee contended that she did not receive the $200; that the instruments were signed by her only in order that appellant might sell the property and give her one-half of the proceeds. Appellant denied this, asserting that the deeds evidenced an outright sale and that the $200 was paid to appellee. The quitclaim deeds were filed for record after the second marriage and shortly before the present divorce suit was filed.

Under this record, the parties, upon first divorce, became tenants in common of the two tracts of land. Williamson v. Gore, Tex.Civ.App., 73 S.W. 563 (writ refused).

During the time they were single, they dealt with each other at arm's length and on the same basis as if they were strangers. Myers v. Crenshaw, 116 S.W.2d 1125 (Syl. 21); Id., 134 Tex. 500, 137 S.W.2d 7.

The title to the property owned by them at the time they entered into the second marriage, was fixed as of that time.

Upon the trial of the second divorce suit the district court had jurisdiction to determine title to such property as between the parties, which included the right to determine its status as either separate or community, and to set aside each party that which was his or her separate property and to make such disposition as to that which was community as the facts justified; also, as a part of such determination, to hear and determine the question of the validity of the quitclaim deeds, considering, among other facts, their relationship to each other at that time. Art. 4638, R.C.S.1925.

The trial court having determined such questions, we have only to examine the record to see that her determination is sustained by substantial evidence and is not against the great preponderance of the evidence. This we have done, and, finding that the trial court's judgment is sustained by the evidence and is not against the preponderance of the evidence, conclude that the judgment below should be affirmed. It is so ordered.

BOND, C. J., dissents.

On Motion for Additional Findings of Fact, for Rehearing, and to Certify.

Appellant has filed a motion for additional findings of fact, for rehearing, and to certify.

We are of the opinion that the motion for additional findings of fact should be sustained and such findings made by the

court. The request for findings is as follows:

"(A) The trial court found that appellant did pay the sum of $200 to appellee as consideration for her signing the two quitclaim deeds. Does the Appellate Court support this finding? (B) When the quitclaim deeds in question were signed by the appellee in 1946, did title to the property then and there pass to appellant? (C) At the time of the remarriage of the parties in 1947, in whom was the valid legal title to such property? (D) Did the District Court have jurisdiction in the second divorce suit to partition property admittedly acquired during the first marriage and partitioned among the parties themselves before the second marriage?"

The trial court's judgment recites the following: "The court further finds that the plaintiff, George Townsley, had advanced the defendant, Emma Margaret Townsley, the sum of $200.00, on her community interest, which said sum shall be deducted from her half-interest upon a final settlement of the estate."

Appellee's testimony is recited in the dissenting opinion by Mr. Chief Justice Bond. It shows the $200 was given to appellee after the second marriage, and not all at one time. The trial Court further found by recitals in the judgment that the parties were unable to agree upon a settlement of their property rights; appointed a receiver and ordered him to sell the property and distribute the proceeds.

The trial court did not file separate findings of fact or conclusions of law and none were requested by the parties.

Under the testimony the trial court's finding that the $200 was paid to appellee during the second marriage is sustained. In this connection we should further find that the trial court's implied finding that the property was owned one-half by each party is also sustained by both pleadings and evidence.

Appellee plead, as to a partition of the property, as follows: "Cross-plaintiff would represent to the court that while it was true that plaintiff and defendant were divorced in Dallas County, Texas, in the year 1944 as aforesaid, no partition or division of their community estate was had at said time for the reason that the real estate market was unfavorable and it was agreed between plaintiff and defendant that a sale would be had when the market got right; that thereafter on or about the 28th day of November, 1946, the cross-plaintiff came to Houston and advised your cross-defendant that if she would give him the right to sell said property in Dallas, that he would give her $200.00 the best of the purchase price that he received for both or either of them and being an uneducated and unlettered woman, she executed what now purports to be a quitclaim deed for her interest in said property, believing at the time that she was only authorizing her former husband to sell such property for the purpose of making a division of the proceeds therefrom and delivered such instrument to him for that purpose alone; that thereafter he sent to Houston a deed to be executed by her and himself to some party in Dallas County to the one-acre tract and improvements for a consideration of $4,000.00, but the cross-defendant, having failed and refused to pay her the $200 that he had agreed to pay at the time of the execution of such authority, she refused to sign such deeds or deed because she was afraid that not having paid the $200.00 that he would not pay her her part of the sale price. Plaintiff would represent to the court that she now charges the fact to be that said quitclaim deeds, if she executed same, were procured through fraud by her former husband with the sole intent on the part of him the said George Townsley, to cheat and defraud your cross-plaintiff out of her community interest in said property and no consideration for the execution of same was paid and none intended to be paid by cross-defendant at the time he persuaded your cross-plaintiff to execute same; that had he paid said purported consideration, the same would have been unjust, unconsciously, inequitable in acquiring the title to the value of the property as hereinabove alleged."

At the time the quitclaim deeds were signed in 1946, the legal title did pass from appellee to appellant. They had been divorced prior to that time and had not then remarried, but it passed to appellant charged with a trust created by the circum-

stances and the oral agreement made at the time and immediately prior to the signing of such quitclaim deeds. As stated by appellee in her testimony: "He told me if I would sign those papers he would give me $200, and after the property was sold he would give me my half." She further testified as follows. "Q. What did he tell you that induced you to re-marry him? A. He just came down and asked me to marry him over and we would try to get along and he would give me back that quitclaim deed. And I went to Dallas and married him on May 24, 1947 and he gave me back the deed and also one his ex-wife signed."

She also testified one of the properties was a four-room house with front, back, and side porches, in a "pretty nice part of town"; the other, as shown by the deed, was 140 by 287 feet on the corner of the J. Fred Smith and Henry Boads in Dallas County.

We therefore find as a fact that in 1946 legal title passed to appellant, charged with a trust in favor of appellee. Brotherton v. Weathersby, 73 Tex. 471, 11 S.W. 505; Jopling v. Caldwell-Degenhardt, Tex.Civ. App., 292 S.W. 958; 6 Texas Law Review 116.

■ The court had jurisdiction not only to partition the property, but also to find its status as separate or community property, and whether the title was legal or equitable.

At the time of the second marriage each party had a one-half interest in the property; each one-half interest was the separate property of such party; appellant holding the legal title to the whole, charged with appellee's equitable title to her one-half.

What we have written in the original opinion and on the motion for additional findings above, disposes of the questions raised in the motion for rehearing and to certify, and such motions are overruled. This without prejudice to appellant's filing a second motion for rehearing.

BOND, Chief Justice (dissenting).

I am not in accord with the majority. To set aside a deed under the facts and circumstances as revealed in this record makes title to real estate rest on unsafe grounds. The parties, grantor and grantee, as stated in the majority opinion, during the time they were single "dealt with each other at arm's length and on the same basis as if they were strangers."

On November 19, 1946, the grantor, Emma Margaret Denoyelle (Townsley), a feme sole, was the owner of an undivided one-half community estate with grantee in and to the land involved in this suit; and at said time she executed the two deeds in question, conveying her community interest, and acknowledged in each deed before a notary public—"that she executed it for the purposes and consideration therein expressed." One of the deeds recited $1 consideration; the other $200 consideration. The trial court, in her judgment, found, on the controverted testimony of the parties, that the grantee (appellant herein) paid the $200 to the grantor (appellee) for her community interest in said property. No objection or exception was raised either in the court below or error assigned here as to such finding. So, it stands as an adjudicated fact. There was no pleading to void the deeds, and the evidence insufficient to set aside the deeds.

Grantor (appellee) testified, and her testimony, which I quote, was all the proof offered bearing on the issue involved:

"Q. Now in 1946, he (appellant) came down to see you in Houston, did he? A. Yes, sir.

"Q. Had he sent papers down there for you to sign prior to his coming? A. Yes, sir.

"Q. You did not sign them? A. No.

"Q. Why not? A. Because he sent Mr. and Mrs. Bair down there.

"Q. You were willing to take that $200 for your part of the community property? A. No, sir.

"Q. And he later came down himself. When he came, what did he tell you? A. He told me if I would sign those papers he would give me $200, and after the property was sold he would give me my half.

156

"Q. What did you think it was you were signing? A. I signed so he could sell because I needed the money same as he did.

"Q. Did he give you the two hundred dollars? A. No.

"Q. Did he ever at any time give you $200? A. Well, after I married him, he gave me amounting to that.

"Q. At one time? A. No, not at one time."

The grantee (appellant here) testified:

"Q. I will ask you to state the facts as to whether or not you went to Houston to see Mrs. Townsley about it (sale of the property)? A. I went. * * *

"Q. Did you take any papers down there? A. Not the first time, I didn't.

"Q. Did you go see her a second time? A. I went back a second time.

"Q. To see Mrs. Townsley? A. The first time I went down there and I had another fellow with me, but I didn't take the papers. * * * She didn't write nobody —I had a lawyer write her, and he told her I would give her $200 to sign the papers. She didn't answer, and Mr. Bair went down and talked to her and she wouldn't sign for him, but she did tell him she would sign if I would bring the papers down there.

"Q. Did you take the papers down there? A. I took them down on Friday night and we went to a notary public on Saturday morning, between eight and nine, and the notary public stamped the papers and I gave her two one-hundred-dollar bills."

It will thus be seen from appellee's testimony, alone, giving it the most favorable consideration, that she executed the deeds for the purposes related and, incident thereto, on the basis of a verbal promise made contemporaneously with the deeds; which promise was to be effective in the future. I repeat, "He told me if I would sign those papers, he would give me two hundred dollars, and *after the property was sold he would give me my half.* * * * I signed so he could sell, because I needed the money same as he did." (Emphasis mine.) Such verbal collateral promise, or agreement, is in direct conflict with, and modified and varied the terms of the deeds,—

imposing upon the grantee a further obligation to do and perform a covenant subsequent; that is, *"After* the property was sold he (grantee) *would* give me my half." Such promise or agreement not being within the covenants of the deeds, and no pleadings whatsoever raising the issue that such was intended, or omitted therefrom through fraud, accident or mistake, or that the written contracts (deeds) are ambiguous, such promise or agreement is wholly insufficient to set aside the written instruments.

It is settled law in this State and in all other jurisdictions that a promise to do or refrain from doing something in the future may be grounds for breach of contract resulting in damages, but such would not constitute fraud or deceit to set aside a written instrument. Only fraud inducing *the execution* of a written instrument, made before or at the time of the execution, will set aside such instrument. In 20 Tex.Jur. 33, note 20, text supported by authorities: "In order for a promise to constitute fraud, it is necessary that it should be made with the intent at the time that it would not be performed and with the intention, design and purpose of deceiving." No such allegations and proof are in this record.

In Lott Town & Imp. Co. v. Harper, Tex. Civ.App., 204 S.W. 452, 453, affirmed by the Supreme Court, 228 S.W. 188, applicable here, it is tersely stated: " 'It is the general rule that a promise to perform an act in the future will not amount to fraud in the eyes of the law, although it may have been the propelling inducement to the execution of the contract, and, though it may have been totally disregarded, still it cannot be made the basis of a suit to avoid a contract.' Lemmon v. Hanley, 28 Tex. 219; Jackson v. Stockbridge, 29 Tex. 394, 94 Am.Dec. 290; Moore v. Cross, 87 Tex. 557, 29 S.W. 1051; Mid-Continent Life Ins. Co. v. Pendleton [Tex.Civ.App.], 202 S.W. 769."

See also, to the same effect, Commonwealth Bonding, etc., Co. v. Barrington, Tex.Civ.App., 180 S.W. 936; Pool v. Joy, Tex.Civ.App., 61 S.W.2d 581; Miller Mfg. Co. v. Provine, Tex.Civ.App., 17 S.W.2d 128. So, whether or not the promise testi-

fied to by the appellee was made (which was controverted by the appellant), since it was directly in conflict with the terms of the deeds it cannot be the basis to set aside the deeds. And particularly so, when the deeds are not sought in the pleadings to be set aside. In Urso v. City of Dallas, 221 S.W. 2d 869, opinion by this court, edited by our Mr. Justice Cramer, appellant sought by parol evidence to defeat the enforcement of a written real estate contract, based upon a contemporaneous verbal promise or agreement putting adverse additional covenants and agreement for performance upon the city. In that case it is said: "In our opinion the evidence is sufficient to raise an issue as to whether appellant would have signed the contract but for the 'representations'; but, standing alone, it is not sufficient to form the basis of a judgment for appellant. Too, the 'representations' amounted to no more than an oral promise, not included in the written contract, to do something in the future. Even in a specific performance suit, the general rule is: 'The failure to perform an oral promise to do something in the future, upon which the defendant relied, is not a defense unless the promise was made fraudulently—that is, for the purpose of inducing the execution of the contract by the other party *and without any intention at the time to perform.'* 38 Tex.Jur. sec. 11, 659 (Emphasis ours.)" To the same effect is cited with approval the holding in the case of Swink v. City of Dallas, Tex.Com.App., 36 S.W.2d 222, Com.App., approved by Sup.Ct.; also Tackett v. Cunningham, Tex.Civ.App., 91 S.W.2d 965, Syl. 12.

In motion for rehearing, appellant urges this Court to certify the question at issue for determination of the Supreme Court. In view of law, that the Supreme Court has no jurisdiction of an application for writ of error in actions for divorce, as here, and the importance of the question involved to the jurisprudence of this State, the appellant is entitled to the certificate. In the light of the majority's opinion being in conflict with authorities above cited, and particularly of this Court, I am of the opinion the question of law involved should be certified.

I respectfully dissent to the opinion of the majority. The cause should be reversed and, for the reasons above stated, judgment should be rendered for the appellant for the land in question, setting aside the receivership; otherwise, the judgment of the court below should be affirmed.