

# The Attorney General of Texas

March 19, 1985

**JIM MATTOX**
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

I Texas, Suite 700
Houston, TX. 77002-3111
713/223-5886

808 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Mr. Lyndon L. Olson, Jr.
Chairman
State Board of Insurance
1110 San Jacinto Boulevard
Austin, Texas    78786

Opinion No.   JM-301

Re:  Whether the Texas Insuranc
Code prohibits health insuranc
policy provisions that discrimi
nate with regard to payment fo
treatment by certain types o
health care practitioners base
on (1) an express exclusion o
such practitioners or (2) "plac
and manner" restrictions tha
indirectly exclude such practi
tioners

Dear Mr. Olson:

You have asked our opinion regarding whether the State Board o
Insurance should approve the following types of sickness and acciden
insurance policy provisions:

> 1.  Payment of benefits . . . is specifically
> limited to instances where treatment is provided
> by a doctor of medicine.  No benefits will be paid
> for treatment by a doctor of dentistry, doctor of
> chiropractic,  doctor  of  optometry,  doctor  of
> podiatry,  doctor  in  psychology,  audiologist,  or
> speech-language pathologist.

> 2.  Benefits are payable for manipulation of
> the spine.  However, benefits will be paid only
> when such treatment is provided in a hospital.

> 3.  Benefits are payable for manipulation of
> the spine when treatment is provided while the
> insured is under general anesthesia.

> 4.  Benefits  are  payable  for  treatment  of
> mental illness or psychological impairment, except
> that benefits payable when the insured is an out-
> patient and treatment is provided by a psycho-
> logist are limited to $20 per treatment and 25
> treatments  per  year.  There  is  no  limit  on
> benefits payable when treatment is provided by a

psychiatrist    other    than    co-insurance    and deductibles.

5. Benefits are payable for treatment of chiropractic services, except that benefits are payable on an out-patient basis or schedule when treatment is provided by a chiropractor and are limited to $20 per treatment and 20 treatments per year. There is no limit on benefits payable, except co-insurance and deductibles, when treatment is provided by a doctor of medicine.

The requirement that insurance policy forms be approved by the State Board of Insurance as well as the grounds on which the board shall disapprove forms are set forth in article 3.42 of the Insurance Code. Article 3.42(a) provides:

No policy, contract or certificate of life, term or endowment insurance, group life or term insurance, industrial life insurance, accident or health insurance, group accident or health insurance, hospitalization insurance, group hospitalization insurance, medical or surgical insurance, [or] group medical or surgical insurance . . . shall be delivered, issued or used in this state . . . unless the form of said policy, contract or certificate has been filed with the State Board of Insurance and approved by said Board. . . .

Article 3.42(g) provides:

The State Board of Insurance shall forthwith disapprove any . . . form, or withdraw any previous approval thereto if, and only if,

(1) It is in any respect in violation of or does not comply with this Code.

(2) It contains provisions which encourage misrepresentation or are unjust, unfair, inequitable, misleading, deceptive or contrary to law or to the public policy of this state.

(3) It has any title, heading or other indication of its provisions which is misleading. (Emphasis added).

You specifically ask:

1. Does the insured's article 21.52, Insurance Code, freedom to select a practitioner negate

provisions such as (1) above which exclude specified practitioners?

— 2. Are restrictions of the type set out in (2) through (5) above allowable when no provision enumerates which practitioners will be recognized and which will not be? In other words, when not excluded by reference, can a practitioner be excluded by restrictions on the place and manner in which treatment be administered?

The provision of the Insurance Code about which you inquire, article 21.52, section 3, states:

> Any person who is issued . . . any health insurance policy . . . by any insurance company, association, or organization . . . may select a licensed doctor of podiatric medicine, a licensed dentist, or a doctor of chiropractic to perform the medical or surgical services or procedures scheduled in the policy which fall within the scope of the license of that practitioner, a licensed doctor of optometry to perform the services or procedures scheduled in the policy which fall within the scope of the license of that doctor of optometry, an audiologist to measure hearing . . . or a speech-language pathologist to evaluate speech and language . . . if those services or procedures are scheduled in the policy. The payment or reimbursement by the insurance company . . . shall not be denied because the same were performed by a licensed doctor of podiatric medicine, a licensed doctor of optometry, a licensed doctor of chiropractic, a licensed dentist, an audiologist, or a speech-language pathologist. There shall not be any classification, differentation, or other discrimination in the payment schedule or the payment provisions . . . nor in the amount. . . .

The present list of practitioners in article 21.52 is the result of several amendments to the original article enacted in 1977. In legislative committee hearings, the bills which added practitioners to article 21.52 were frequently referred to as "freedom of choice" bills. The purpose was to permit the insured, not the insurer, to select the kind of practitioner that would perform the services covered in the insurance policy. See, e.g., Testimony on Senate Bill No. 96, Senate Economic Development Committee, 66th Leg., public hearing, recorded Jan. 29, 1979, available in Legislative Reference Library; Id., House Committee on Health Services, recorded Feb. 21, 1979; Testimony on House Bill No. 860, Senate Committeee on Human

Resources, 66th Leg., public hearing, recorded Apr. 25, 1979, available in Legislative Reference Library.

We conclude that article 21.52 expressly prohibits an insurer from discriminating against an insured, with regard to payment or reimbursement, based on the type of practitioner the insured selects to provide medical care. The prohibition against discrimination extends to the services of six kinds of health care practitioners: podiatrists, dentists, chiropractors, optometrists, audiologists and speech-language pathologists. The prohibition against discrimination applies with respect to those services (1) covered by the relevant insurance policy and (2) within the scope of the affected practitioner's license or certification. Policy provisions which exclude, restrict or limit payment or reimbursement for such services when they are provided by any of the specified practitioners, and do not provide the same exclusion, restriction or limitation on those services when they are provided by a doctor of medicine, are unlawful.

We believe the first and fifth policy provisions about which you inquire must be disapproved because they expressly discriminate against one or more of the practitioners identified in article 21.52.

Article 21.35A of the Texas Insurance Code is similar to article 21.52 and relevant to the fourth policy provision about which you inquire. Article 21.35A prohibits discrimination against a person who elects to obtain treatment from a licensed psychologist rather than a doctor of medicine, in a group insurance policy or group hospital plan, as follows:

> Any person who is covered by a policy . . . of group insurance or of a group hospital plan . . . and whose policy . . . provides for services or partial or total reimbursement for services that are within the scope of practice of a licensed psychologist, is entitled to obtain these services or receive reimbursement for these services regardless of whether the services are performed by a licensed doctor of medicine or a licensed psychologist.

The fourth policy provision about which you inquire expressly differentiates between the amount of reimbursement available for services of a psychologist and the amount of reimbursement available for services of a psychiatrist. Special limitations apply to reimbursement for psychologists that do not apply to psychiatrists. Thus, we believe the fourth policy provision you identify must also be disapproved when it appears in a policy or plan subject to article 21.35A.

We also conclude that the plain language of articles 21.52 and 21.35A prohibits not only those forms which expressly state that the amount or existence of reimbursement shall vary according to the type

of practitioner providing the service, as in the first, fourth and fifth policy provisions you quote, but also those forms which have the same or similar discriminatory effect, such as the second and third policy provisions quoted.

To determine whether the policy discriminates against certain types of practitioners, the "place or manner" restrictions about which you inquire must be evaluated in light of the nature of the benefits to which they apply. The second and third provisions state that benefits are payable for manipulation of the spine. However, the second provision limits the benefits to manipulation performed in a hospital and the third provision limits the benefits to manipulation performed while the insured is under general anesthesia.

Manipulation of the spine is a service commonly provided by chiropractors and is within the scope of their licenses. Chiropractors' licenses do not, however, permit them to administer general anesthesia or admit patients to hospitals. Thus, the effect of the quoted restrictions is a categorical exclusion of the only type of practitioner commonly associated with the treatment purportedly within the scope of the insurance policy coverage. Since chiropractors are among the practitioners identified in article 21.52, such provisions subvert the statute and are nonenforceable.

Our conclusion is based on the plain language of the statute and legislative intent.

The plain language of articles 21.52 and 21.35A does not limit the prohibition against discrimination to any particular method or means of discrimination. On the contrary, article 21.52, for example, expressly states that there shall not be "any classification, differentiation, or other discrimination . . . in the amount or manner of payment or reimbursement. . . ."

To give effect to legislative intent, a statute should be given a "practical and reasonable construction rather than a literal or thwarting construction." See Denver-Albuquerque Motor Transport, Inc. v. State, 584 S.W.2d 738, 740 (Tex. Civ. App. - Amarillo 1979, no writ) and cases cited therein. Articles 21.52 and 21.35A prohibit discrimination or differentiation based upon the type of practitioner providing the service if the practitioner is among those specified. To accomplish the object of the legislation, such discrimination must be prohibited not only when it is the result of expressly discriminatory restrictions but also when it results from discriminatory restrictions disguised as non-discriminatory restrictions limitations on the place or manner in which the service is provided.

Neither article 21.35A nor article 21.52 appears intended to alter the basic nature of the benefits provided in an insurance policy except to the extent necessary to prohibit discrimination based on categorical distinctions between certain types of practitioners. The Texas Supreme Court has held that the State Board of Insurance may

consider factors other than those which appear within the "four corners of the policy" in deciding whether to approve a policy form. Key Western Life Insurance Co. v. State Board of Insurance, 350 S.W.2d 839, 850-52 (Tex. 1961). Therefore, the State Board of Insurance may consider factors deemed necessary to determine the discriminatory purpose or effect of any given policy provision.

You have also directed our attention to article 3.70-2(B) of the Insurance Code, which provides:

> No policy of accident and sickness insurance shall make benefits contingent upon treatment or examination by a particular practitioner or by particular practitioners of the healing arts hereinafter designated unless such policy contains a provision designating the practitioner or practitioners who will be recognized by the insurer and those who will not be recognized by the insurer. . . . In designating the practitioners who will and will not be recognized, such provision shall use the following terms: Doctor of Medicine, Doctor of Osteopathy, Doctor of Dentistry, Doctor of Chiropractic, Doctor of Optometry, Doctor of Podiatry, Audiologist, and Speech-language Pathologist.

Another version of this amended article passed by the legislature in a separate bill at the same session as the above-quoted version includes psychologists and excludes audiologists and speech-language pathologists from the list of practitioners.

Neither version of article 3.70-2(B) should be read to conflict with article 21.52. Article 3.70-2(B) neither authorizes nor prohibits any discrimination between practitioners. Article 3.70-2(B) merely prescribes the format for excluding practitioners when such exclusions are not prohibited elsewhere in the Insurance Code.

Even if article 3.70-2(B) and article 21.52 were ambiguous or potentially contradictory, however, various rules of statutory construction support the foregoing interpretation. Statutes should be construed in harmony with other statutes unless a contrary intention is clearly manifest. Freels v. Walker, 26 S.W.2d 627, 630 (Tex. 1930). Even when the literal language of one enactment conflicts with that of another, they should be read together and harmonized, if reasonably possible. Dallas Railway & Terminal Co. v. Strickland Transportation Co., 225 S.W.2d 901, 905 (Tex. Civ. App. - Amarillo 1949, no writ). This proposition is especially true with respect to statutes which, as here, deal with the same general subject, and are therefore considered to be in pari materia. See Texas State Board of Pharmacy v. Kittman, 550 S.W.2d 104, 106 (Tex. Civ. App. - Tyler 1977, no writ); 2A C. Sands, Sutherland Statutory Construction, §51.02, at 453-54 (rev. 4th ed. 1984).

Our construction of article 3.70-2(B) is also supported by the rule that, by reason of the disparity in bargaining positions between insurance companies and purchasers of insurance, statutes regulating the relationships of insurers and insureds are interpreted strictly against the insurance companies and liberally in favor of insured persons. 2A C. Sands, supra, §58.04, at 716; 3 id., §70.05, at 308 (4th ed. 1974). This rule favors upholding the policy embodied in article 21.52 of giving the insured freedom to choose among various kinds of practitioners.

We find no indication of legislative intent which justifies a contrary interpretation. Both article 21.52 and article 3.70-2(B) were amended in 1983. Article 21.52, section 3 was amended to add audiologists and speech-language pathologists (without the express "scope of license" requirement included for the other specified practitioners). Acts 1983, 68th Leg., ch. 380, at 2065. As part of the same bill, article 3.70-2(B) was also amended to add "audiologists" and "speech language pathologists." A second bill, which also amended article 3.70-2(B), was passed later during the same session. This second bill added "Doctor of Psychology" to 3.70-2(B) but did not include "audiologists" or "speech language pathologists." Senate Bill No. 255, 68th Leg., ch. 492, at 2887. Both bills were signed by the governor.

The amendment of both article 21.52, section 3 and article 3.70-2(B) in the same session reinforces the reasons for construing the statutes to give meaning and effect to both. See Myers v. Crenshaw, 137 S.W.2d 7, 13 (Tex. 1940) (two statutes relating to same subject and amended at same session should be read together); 2A C. Sands, supra, §51.03, at 467. The principle that statutes in pari materia should be construed together is a restatement of the presumption against the implied repeal of statutes. See Fortinberry v. State ex rel. Myers, 283 S.W. 146, 149 (Tex. 1926); 2A C. Sands, supra, §51.01, at 449. The additions to the list of practitioners made in both articles during the same legislative session plainly indicates that the legislature did not contemplate any conflict or intend an implied repeal of either article.

## S U M M A R Y

Article 21.52, section 3, of the Texas Insurance Code prohibits discrimination by an insurer against an insured with regard to payment of benefits based on the insured's election to obtain the services of a podiatrist, dentist, chiropractor, optometrist, audiologist or speech-language pathologist rather than a doctor of medicine or some other kind of health care practitioner. The prohibition applies if the services obtained are within the scope of services covered

by the policy and within the scope of the practitioner's license or certification. The prohibition extends to those insurance policy provisions which expressly discriminate against one or more of the specified types of practitioners, as well as to those provisions, including place and manner restrictions, which have the same or a similar discriminatory purpose or effect.

Very truly yours

JIM MATTOX
Attorney General of Texas

TOM GREEN
First Assistant Attorney General

DAVID R. RICHARDS
Executive Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Marianne Woodard
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Colin Carl
Edna Ramon
Paul Rich