POKORNY et al. v. YUDIN.

No. 4422.

Court of Civil Appeals of Texas. El Paso.

May 3, 1945.

John L. Fowler, of Odessa, for appellant Pokorny.

Stubbeman, McRae & Sealy, of Midland (William B. Neely, of Midland, of counsel), for appellee.

PRICE, Chief Justice.

This is an appeal from the judgment of the District Court of Ector County. S. M. Yudin as plaintiff sued Ed Pokorny and B. B. Fitz as defendants to establish and protect certain easements which he alleged were appurtenant to the east 90 feet of Lots 3 and 4, Block 27, original Town of Odessa, Ector County, Texas. The alleged

servient lands were portions of the west 50 feet of Lots 1, 2, 3 and 4, all in said Block 27 in the Town of Odessa, then alleged to be owned by defendant Pokorny; also easement as to a portion of Lot 5 in said Block 27 then alleged to be owned by defendant Fitz.

Trial was before the court without a jury. Judgment was in favor of the plaintiff from which defendants have each appealed. A rough sketch of the properties involved showing the general location of the water lines, sewer and gas lines and passageway will be here reproduced.

This sketch is only illustrative and, appellee, who introduced same, only claims that it is so illustrative. The facts of this case are rather complicated. Findings of Fact and Conclusions of Law were filed by the trial court. The Findings of Fact are long, but not unnecessarily so. It is deemed necessary to set same forth in full.

"1. The property here involved is situated in Block 27, Original Town of Odessa, Ector County, Texas, as shown by map or plat of said town in Book 3, pages 32-33, Deed Records of Ector County, Texas. This Block is in the business district of the

PLAINTIFF'S EXH. 3
(WEST)

City of Odessa, being bounded on the North by 5th Street; on the East by Grant Street; on the South by 4th Street; and on the West by Lee Street. A Public alley exists between Grant and Lee Streets and crosses Block 27. Lots 1 through 5 of Block 27 are situated East of and adjacent to this public alley. The City's sewer, water and gas mains or lines are in the public alley and cross 4th and 5th Streets at the intersection of said streets with the public alley. No sewer or gas main runs along 4th Street, Grant Street, 5th Street or Lee Street. A six inch water main, designed primarily to connect two 8 inch water mains in the City water system, runs along 4th Street between the public alley West of Lee Street and the public alley East of Grant Street. No water main runs along Grant Street, 5th Street or Lee Street. Fifth Street, Grant Street, 4th Street and Lee Street are paved. A concrete sidewalk extends along Grant Street and 4th Street and a concrete curbing is constructed along Grant Street and along 4th Street to the point where 4th Street is intersected by the public alley, an unpaved strip, eighteen inches wide, running in front of Lots 1 and 2 along Grant Street between the sidewalk and the curbing. The public alley is unpaved. Lots 1 through 5 of Block 27, as originally surveyed, are 25 feet by 140 feet each, fronting 25 feet on Grant Street and extending West therefrom 140 feet to the public alley. Lot 1 is on the Southeast corner of Block 27.

"2. Prior to 1926, Lots 1 to 5, inclusive, were improved and were, in that condition acquired by Joe W. Rice and wife, Flora E. Rice, and Cora Alice Goodwin, the latter being the unmarried sister of Flora E. Rice. Lots 1 and 2 were acquired on July 2, 1926, by Joe W. Rice and wife, Flora E. Rice, and Cora Alice Goodwin on January 20, 1927, and the interest of Cora Alice Goodwin in Lots 3 and 4 was thereafter deeded to Joe W. Rice and wife, Flora E. Rice, on March 5 of the same year. Flora E. Rice died intestate on or about April 15, 1928, leaving one child, namely, Mattie Jo Rice, and Joe W. Rice qualified July 6, 1928, in the County Court of Ector County, Texas, as administrator of the community estate of himself and his deceased wife. Cora Alice Goodwin died testate on or about July 2, 1937, leaving her entire estate to said Mattie Jo Rice and naming Joe W. Rice independent executor of her will. The will was probated, and Joe W. Rice qualified as independent executor thereof, in the County Court of Denton County, Texas.

"3. Following the acquisitions above described, Joe W. Rice undertook to develop and improve the property for business purposes and this building project resulted in the construction of buildings and improvements which, as modified and added to subsequently, are still in existence upon the property. Two buildings were erected during the fall and winter of 1926 on the East 90 feet of Lots 1 and 2. Shortly thereafter a toilet was added to the rear of the buildings on Lots 1 and 2 and a sewer line, leading therefrom and running underground across the West 50 feet of Lots 1 and 2, was connected with the city sewer main in the public alley. Two buildings on the East 90 feet of Lots 3 and 4 were erected during the summer of 1927 and, during the spring of 1928, the Rio Theater Building was erected on the West 40 feet of Lots 1, 2, 3 and 4. The Rio Theater Building was erected over, and without disturbing, the above described sewer line running underground across the West 50 feet of Lots 1 and 2. This plan of construction left a passageway over and across the East 10 feet of the West 50 feet of Lots 1, 2, 3 and 4 and provided a means of entering and leaving the East 90 feet of Lots 3 and 4 from the rear. In 1931, the buildings on the East 90 feet of Lots 3 and 4 were provided with water and gas from the city water and gas systems and, prior thereto, said buildings were connected with the above described sewer line to provide sewage disposal through the city system. The water and gas lines serving the East 90 feet of Lots 3 and 4 were laid at the same time in parallel courses diagonally across the passageway aforesaid to the rear of the Rio Theater Building and then across the South 2 feet of the West 50 feet of Lot 5 and there connected with the city mains in the public alley. The sewer line serving the East 90 feet of Lots 3 and 4 was laid along the passage way aforesaid and connected with the sewer line previously provided which runs under the Rio Theater Building to connect with the city sewer main in the public alley. The development of the property in the manner above described was completed prior to the beginning of the year 1932.

"4. On the 6th day of February, 1932, T. G. Hendrick acquired all of the property above described, except Lot 5. The

water and gas lines were then laid across Lot 5 as above described and were then in use and continued thereafter to be used for the purpose of supplying water and gas to the East 90 feet of Lots 3 and 4. Joe W. Rice and T. E. Neelly then leased the East 90 feet of Lots 3 and 4 from T. G. Hendrick for business purposes. The habendum and warranty clauses of the deed to Hendrick read as follows: 'To have and to hold the above described premises, together with all and singular the rights and appurtenances thereto in anywise belonging unto the said T. G. Hendrick, his heirs and assigns forever, and I do hereby bind myself, my heirs, executors and administrators, to warrant and forever defend, all and singular the said premises unto the said T. G. Hendrick, his heirs and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof.'

"5. On the 6th day of October, 1934, Joe W. Rice and T. E. Neelly acquired the East 90 feet of Lots 3 and 4 from T. G. Hendrick who then owned the remainder of Lots 1, 2, 3, and 4. The improvements on the property, including the passageway and the sewer, water and gas lines, were well known to Joe W. Rice and T. E. Neelley, the former having installed them and the two having been partners in a bakery business on the premises when they were installed. During the negotiations which culminated in this purchase, it was expressly represented by the grantor that the purchasers had the right of passage over the way occupying the East 10 feet of the West 50 feet of Lots 1, 2, 3, and 4 and that it would remain open and unobstructed as a means of ingress and egress to and from the rear of the East 90 feet of Lots 3 and 4, and this understanding, although not incorporated expressly in the deed, was a factor influencing the purchasers to take the property and pay therefor the consideration agreed upon. The passage way, the sewer, water and gas lines, located as above described, were being then used and continued thereafter to be used. The habendum and warranty clauses of the deed to Joe W. Rice and T. E. Neelly read as follows: 'To have and to hold the above described premises, together with all and singular, the rights and appurtenances thereto in anywise belonging unto the said Joe W. Rice and T. E. Neelly, their heirs and assigns forever; and we do hereby bind ourselves, our heirs, executors and administrators, to warrant and forever defend all and singular the said premises unto the said Joe W. Rice and T. E. Neelly, their heirs and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof.'

"6. The present Cash Food Mart Building is situated on the East 90 feet of Lot 2 and occupies practically the entire East 90 feet of Lot 2. The East 90 feet of Lot 1 is vacant, except to the extent it is used in connection with the apartments on the second floor of the Cash Food Mart Building. The building originally erected on the East 90 feet of Lot 1 was damaged by fire and, in the construction of the apartments and remodeling, was not replaced. The present Liberty Cafe and Western Auto Associate Store Buildings are situated on the East 90 feet of Lots 3 and 4 and occupy approximately the East 80 feet of Lots 3 and 4. The Rio Theater Building is situated on the West 50 feet of Lots 1, 2, 3 and 4 and occupies the entire West 40 feet of Lots 1, 2, 3 and 4. These buildings, except for the original building on the East 90 feet of Lot 1, which burned, although remodeled and improved by subsequent owners, are the buildings originally constructed by Joe W. Rice. The present Fitz Drug Building is situated on Lot 5 and occupies approximately the East 55 feet of Lot 5.

"7. S. M. Yudin, the plaintiff, acquired the East 90 feet of Lots 3 and 4, upon which the present Liberty Cafe and Western Auto Associate Store Buildings are situated, from Joe W. Rice and T. E. Neelly on the 18th day of August, 1941. Subsequent to that date, B. B. Fitz, one of the defendants, purchased Lot 5, and thereafter Ed Pokorny, the other defendant purchased the East 90 feet of Lots 1 and 2 and the West 50 feet of Lots 1, 2, 3 and 4. No one of the deeds in the chain of title of either plaintiff or defendants refers specifically to any easement.

"8. It is the intention of defendant B. B. Fitz to extend the Fitz Drug Building so that it will cover Lot 5 entirely. The South wall of the building would then be co-extensive with the South Boundary line of Lot 5 and leave no means of passage or opening between it and the North walls of the Western Auto Associate Store Building and the Rio Theater Building. He also intends, in doing so, to cut off and remove from Lot 5 the above described water and

gas lines which serve the East 90 feet of Lots 3 and 4.

"9. It is the intention of defendant Ed Pokorny to remodel and extend the Rio Theater Building so that it will cover and close the above described passage way along the East 10 feet of the West 50 feet of Lots 1, 2, 3 and 4. He also intends to cut off and remove the above described sewer, water and gas lines which now serve the East 90 feet of Lots 3 and 4. The combined acts intended by defendants would thus cut off all possible means of entering and leaving plaintiff's property from the rear, for any purpose. There would be at the rear of plaintiff's buildings an open space approximately 10 feet wide surrounded by defendants' buildings.

"10. The private alley along the East 10 feet of the West 50 feet of Lots 1, 2, 3 and 4 is plainly visible, being the natural result of the manner in which the buildings on Lots 1, 2, 3 and 4 are constructed and located. These buildings give the alley way a fixed, permanent, well defined and unchanging location. The private alley has an outlet on 4th Street and terminates at the rear of the Liberty Cafe and Western Auto Associate Store Buildings. The existence of this open way, along the East wall of the Rio Theater Building, is apparent to anyone passing along 4th Street. It came into being in the spring of 1928, when provided by Joe W. Rice in the construction of the buildings on Lots 1, 2, 3 and 4 according to his development plan above described. It was provided by him to serve and make useable the East 90 feet of Lots 3 and 4. Its use for those purposes has continued uninterruptedly from the time of its origin to the present time. During that period it has served the East 90 feet of Lots 3 and 4 and the buildings thereon to carry off surface water, to bring the things connected with the businesses there conducted to and from 4th Street, and as a means of ingress and egress from the rear of those buildings by the employees, tradesmen and customers of the businesses. This use is indicated by a path worn into the surface of the private alley by the comings and goings, the uses above described, during the past 16 years. It was not designed and has not been used for vehicular traffic because of the curbing construction on 4th Street. In more recent years, some deliveries by and to motor trucks, but not all such deliveries, have been made to and from the rear of the Liberty Cafe and Western Auto Associate Store Buildings by going from the public alley across the rear of Lot 5 and the Northern portion of the private alley; and garbage has been removed over that route to the public alley. This use of Lot 5 has been as a convenience only, and plaintiff claims no right to so use Lot 5 and defendants deny that plaintiff has such a right. The private alley is not now and has not been used by the general public, nor by the occupants of Lot 5, nor by the occupants of the Cash Food Mart Building. There is no entrance from the Cash Food Mart Building to the private alley and the occupants of that building can enter the private alley only from 4th Street. A doorway in the North Wall of that building, opening into the East 90 feet of Lot 3, was closed by plaintiff by the construction of an extension to the wall of the Liberty Cafe Building. The private alley is now and has been used only by the owners and occupants of the East 90 feet of Lots 3 and 4, their employees, and those tradesmen and others having business with them. Joe W. Rice and T. E. Neelly and their successor in title, the plaintiff, have used the private alley uninterruptedly in the manner above described and have claimed the right so to do as an incident to the ownership by them of the East 90 feet of Lots 3 and 4. No permission or license so to use the private alley was given by defendant Ed Pokorny's predecessors in title, and he gave none, the existence of such permission or license being specifically denied by him. Maggie E. Scott, his immediate predecessor in title to the West 50 feet of Lots 1 2, 3 and 4, placed a gate across the middle of the alley, but the gate was never locked and did not interfere with the free use of the alley by the owners and occupants of the East 90 feet of Lots 3 and 4. The gate is no longer used as such, but the remains of the gate are still in the alley. The private alley is necessary for the use and continued enjoyment of the East 90 feet of Lots 3 and 4. There is no other means of access to or egress from the rear of the East 90 feet of Lots 3 and 4. The East 90 feet of Lots 3 and 4 was, at the time of severance from the remainder of Lots 1, 2, 3, and 4, in the sale from T. G. Hendrick to Joe W. Rice and T. E. Neelly, surrounded entirely by grantor's land and the land of third persons, this surrounding land now being owned by defendants, except of course Grant Street along the front

of Lots 3 and 4. The remaining land of the grantor was then occupied by the buildings above described which bound and define the limits of the private alley. The property of plaintiff is useable, from its nature and situation and the use of the surrounding property, only when there is a rear, as well as a front, entrance and exit.

"11. The underground sewer line above described was partially completed prior to the spring of 1928 and was connected with the buildings on the East 90 feet of Lots 3 and 4 prior to the end of the year 1931. This right of way was provided by Joe W. Rice as a permanent part of his development plan above described to serve and make useable the East 90 feet of Lots 3 and 4. It has been so used for sewage disposal continuously and uninterruptedly from its origin to the present time. Its location has not changed. It has been used exclusively by the owners and occupants of the East 90 feet of Lots 3 and 4. Joe W. Rice and T. E. Neely and their successor in title, the plaintiff, have used the right of way for the sewer line in its present location and have claimed the right so to do as an incident to the ownership by them of the East 90 feet of Lots 3 and 4. No permission or license so to use the West 50 feet of Lots 1, 2, 3 and 4 was given by defendant Ed Pokorny's predecessors in title and he gave none, the existence of such permission or license being specifically denied by him. The use and maintenance of the sewer line has never been impeded or prevented by defendant Ed Pokorny or by his predecessors in title. The sewer line is necessary for the use and continued enjoyment of the East 90 feet of Lots 3 and 4. The City sewer main is in the public alley between Grant and Lee Streets and the sewer line from the East 90 feet of Lots 3 and 4 must be connected with this line. The West 50 feet of Lots 1, 2, 3 and 4 is situated between and separates the public alley and the East 90 feet of Lots 3 and 4. The sewer line from plaintiff's property must therefore cross the West 50 feet of Lots 1, 2, 3 and 4 in order to connect with the City sewer main. The location and existence of the present sewer line, while not physically visible above ground, is made apparent from the situation of the City sewer main and the defendant's and plaintiff's buildings in relation to each other and this method of, or the possibility of the existence of this method of, sewage disposal from plaintiff's property, across defendant Ed Pokorny's property would be obvious and readily discovered by any person ordinarily conversant with such matters. The only other route which plaintiff's sewer could take in order to connect with the City system would be under plaintiff's buildings into Grant Street, thence South on Grant Street to 4th Street, and thence West on 4th Street until a connection could be made with the City sewer main at or near its intersection with 4th Street, a distance of approximately 325 feet over a course having two right angle turns. In order to dig the ditches in which to lay the pipes over such a course would require, over the entire length of the line, the tearing up and replacing of the concrete floors of plaintiff's buildings, the concrete City sidewalks and the paved City Streets. The plaintiff does not now have the right so to use the sidewalk and the streets and he could do so, if at all, only if the City Government would grant him permission to subject its sidewalks and streets to such use. The City of Odessa has never granted permission to lay such lines under its paved streets and sidewalks.

"12. The underground water and gas lines above described were laid to serve the buildings on the East 90 feet of Lots 3 and 4 prior to the end of the year 1931. Those rights of way were provided by Joe W. Rice as a permanent part of his development plans above described to serve and make useable the East 90 feet of Lots 3 and 4. They have been so used for water and gas continuously and uninterruptedly from that time until the present, an additional water pipe and an additional gas pipe being laid by plaintiff to provide separate service lines for each of his two buildings. The location of the right of way has not changed since the original installation. T. G. Hendrick, Joe W. Rice and T. E. Neely and their successor in title, the plaintiff, have used the rights of way for the water and gas pipes in their present location exclusively and have claimed the right so to do as an incident to the ownership of the East 90 feet of Lots 3 and 4. No permission or license so to use Lot 5 and the West 50 feet of Lots 1, 2, 3 and 4 was given by defendants' predecessors in title and defendants gave none, the existence of such permission or license being specifically denied by them. The use and maintenance of the water and gas lines has never been impeded or prevented by defendants or their predecessors in title.

The water and gas lines are necessary for the use and continued enjoyment of the East 90 feet of Lots 3 and 4. The water and gas mains of the City systems are in the public alley between Grant and Lee Streets and the water and gas lines serving the East 90 feet of Lots 3 and 4 must be connected with those mains of the City systems. The water and gas lines serving plaintiff's property must therefore cross the property of defendants in order to connect with the City systems. There is provided on the rear of Lot 5 the facilities for connecting with the City water and gas systems the lines serving Lot 5, the East 90 feet of Lots 3 and 4, and other properties in Block 27. The gas and water meters are there located and are plainly visible above ground. Four gas meters and four water meters are so located on the rear of Lot 5, but only two of said meters serve the Fitz Drug Building. Two of the water meters and two of the gas meters are provided in connection with the East 90 feet of Lots 3 and 4. The fact that the water and gas lines serving plaintiff's property cross the property of defendants, or the possibility that said lines so cross defendants' property, is apparent from the location of the meters and the manner in which their respective properties are situated with reference to each other and to the City mains for water and gas. Any person ordinarily conversant with the subject could have ascertained their existence readily from an inspection of the premises. There is no other means of providing water and gas to the East 90 feet of Lots 3 and 4 unless plaintiff runs the pipes under his buildings to Grant Street and then along Grant Street and 4th Street in the manner and along the route above described in connection with the sewer line, separate ditches being required in such event for each of said lines. This procedure, while physically not impossible, is dependent upon and can be followed only if the City Government should see fit to grant plaintiff the permission to subject the City sidewalks and the streets to uses of that character. The City of Odessa has never granted permission to lay such lines under its paved streets and sidewalks.

"13. At the time Lots 1, 2, 3 and 4 were acquired by T. G. Hendrick, the water and gas lines were located and being used across Lot 5 and this use of Lot 5 was then known to T. G. Hendrick and to Joe W. Rice, who caused the lines to be so placed, and at the time Lots 1, 2, 3 and 4 were acquired by T. G. Hendrick, it was the intention and understanding of all parties to the transaction that such use of Lot 5 would be continued, no interference with said use having occurred since that time. At the time the East 90 feet of Lots 3 and 4 were acquired by Joe W. Rice and T. E. Neelly, the private alley and the sewer, gas and water lines were located on the West 50 feet of Lots 1, 2, 3 and 4, the gas and water lines extending therefrom across Lot 5, and were being used, the existence and use thereof being known by T. G. Hendrick, Joe W. Rice and T. E. Neelly, and at the time the East 90 feet of Lots 3 and 4 were so acquired, it was the intention and understanding of all parties to the transaction that such use of the West 50 feet of Lots 1, 2, 3 and 4 would be continued, no interference with said use having occurred since that time.

"14. Defendant Ed Pokorny had been actively connected and employed in the grocery business of the Cash Food Mart for more than seven years prior to his acquisition of the East 90 feet of Lots 1 and 2 and the West 50 feet of Lots 1, 2, 3 and 4. During said period of time he was a neighbor-in-business of Joe W. Rice and T. E. Neelly and subsequently of plaintiff. He was aware, before he purchased his property, of the uses above described to which the property was subjected. After plaintiff's acquisition of the East 90 feet of Lots 3 and 4, defendant Ed Pokorny was a party to disputes arising out of the use made by plaintiff of the alley and out of the overflow of sewage in the alley due to the failure of plaintiff's sewer line to always carry the load, or its need of repairs. Defendant Ed Pokorny made no inquiry of plaintiff prior to the purchase of the East 90 feet of Lots 1 and 2 and the West 50 feet of Lots 1, 2, 3 and 4. Less than six weeks after said purchases he notified plaintiff of his intention to have the aforesaid sewer, water and gas lines removed and of his intention to close the alley.

"15. Defendant B. B. Fitz was in business on Lot 5 prior to the time he purchased it. During said period of time the water and gas meters were located on the rear of Lot 5 as above described. He made no inquiry of plaintiff prior to his purchase of Lot 5, but after said purchase he notified plaintiff of his intention to have the aforesaid gas and water lines removed from Lot 5."

There is no question raised by the parties as to sufficiency of pleadings with reference to any of the facts found. It is, however, deemed necessary to set forth the easements established and protected by injunction. Same were as follows:

"1. That there are existing and permanent easements as follows in favor of and appurtenant to the East 90 feet of Lots 3 and 4, Block 27, Original Town of Odessa, Ector County, Texas:

"First, the free and unimpeded right to use a private way through and across the East 10 feet of the West 50 feet of Lots 1, 2, 3 and 4, Block 27, Original Town of Odessa, Ector County, Texas, as a means of ingress and egress to and from the rear of said East 90 feet of Lots 3 and 4.

"Second, the free and unimpeded right to maintain and use an underground sewer line now in existence which extends from the rear of said East 90 feet of Lots 3 and 4 through and across the private way aforesaid through and across said East 10 feet of the West 50 feet of Lots 1, 2, 3, and 4 and through and across the West 40 feet of said Lots 1, 2, 3, and 4, and which joins the sewer main or line in the public alley between Grant and Lee Streets in the City of Odessa, Texas.

"Third, the free and unimpeded right to maintain and use an underground water line now in existence which extends from the rear of said East 90 feet of Lots 3 and 4 through and across the private way aforesaid through and across said East 10 feet of the West 50 feet of Lots 1, 2, 3, and 4 and through and across the South 2 feet of the West 50 feet of Lot 5, Block 27, Original Town of Odessa, Ector County, Texas, and which joins the water main or line in the public alley between Grant and Lee Streets in the City of Odessa, Texas.

"Fourth, the free and unimpeded right to maintain and use an underground gas line now in existence which extends from the rear of said East 90 feet of Lots 3 and 4 through and across the private way aforesaid through and across said East 10 feet of the West 50 feet of Lots 1, 2, 3, and 4 and through and across the South 2 feet of the West 50 feet of said Lot 5 and which joins the gas main or line in the public alley between Grant and Lee Streets in the City of Odessa, Texas."

Before taking up the points of error, it is deemed helpful to set forth some propositions of law relating to easements, most of which are involved in the points urged.

■ An appurtenant easement is a servitude upon the land of one owner on the land of another. The land to which the easement is appurtenant is designated as the dominant estate and the subject land is the servient estate. 15 Tex.Jur. 769, Par. 2.

■ Such an easement is created by grant. It is an interest in the land and the creation or conveyance thereof is within the Statute of Fraud. Vernon's Ann.Civ. St. art. 3995, subd. 4; 15 Tex.Jur. 777, Par. 10.

■ It likewise comes within the law providing for the registration of conveyances. A bona fide purchaser of the servient estate without notice of the easement takes same free of the burden thereof. 15 Tex.Jur. 779, Par. 12; 28 C.J.S., Easements, p. 711, § 47.

■ Where an owner sells part of a tract of land and there is an apparent continuing and necessary servient use of the tract retained in favor of the tract sold, an easement passes by implication in the conveyance. This is true even though the easement be not specifically mentioned in the conveyance. Howell v. Estes, 71 Tex. 690, 12 S.W. 62; Weitzman v. Lee, Tex. Civ.App., 262 S.W. 859, loc. cit. 864, writ refused; El Paso Land Improvement Co. v. Crawford, Tex.Com.App., 292 S.W. 518; Scarborough v. Anderson Bros. Const. Co., Tex.Civ.App., 90 S.W.2d 305, writ dismissed; Van Horne v. Trousdale, Tex.Civ. App., 10 S.W.2d 147; 28 C.J.S., Easements, p. 686, § 30 et seq.; Wiesel v. Smira, 49 R. I. 246, 142 A. 148, 58 A.L.R. 818.

■ Where an owner sells part of a tract of land and there is a continuous apparent permanent and necessary servient use of the tract sold in favor of the tract retained, such easement does not pass, but is reserved from the grant in favor of the retained tract, even though there be no specific reservation in the deed. Scarborough v. Anderson Bros. Const. Co., Tex.Civ. App., 90 S.W.2d 305.

The two foregoing propositions are not sound, of course, if the conveyance intrinsically evidences a contrary intention.

■ An easement can not be inferred from prescription while there is a unitary

194

ownership of the two or more tracts of land, but when this unitary ownership is severed, ten years adverse enjoyment may warrant the presumption of the grant of an easement. Alley v. Carleton, 29 Tex. 74, 94 Am.Dec. 260; Martin v. Burr, 111 Tex. 57, 228 S.W. 543.

According to the Findings of Fact, there was a unitary ownership of the five lots in question in 1928. In 1934 this unitary ownership was severed when there was a conveyance to Hendrick of Lots 1, 2, 3, and 4, Rice retaining, it is presumed, Lot 5. Prior to this conveyance, Rice had erected improvements on the land substantially the same as they now exist. The passageway was established as it now runs. The water, sewer and gas lines ran on the property as they now run. If the use of Lot 5 with reference to 1, 2, 3, and 4 partially conveyed was apparent, continuous, permanent and necessary, then such right to use was appurtenant to Lots 1, 2, 3, and 4 and passed in the conveyance. So as to the other easements herein involved, the elements of continuity and permanency unmistakably appear from the evidence. The passageway was apparent. The gas main, water and sewer pipes were underground. Business buildings occupied the relevant area. That these buildings were served by the utilities involved would be readily inferred by any one. Furthermore, that such pipes were underground would reasonably put one buying the property upon inquiry as to their location. In any event, it is the reasonable inference from the facts that one purchasing would be put on notice of their location. These were business buildings and it was necessary that they be served by the utilities in question. These improvements had been erected when there was a unitary ownership in accordance with a plan. Pipes and mains on the premises led to the city sewage plant. Installations of this character are permanent in nature and must be coordinated with the general water, sewage and gas supply systems. It reasonably appears that plaintiff now has no other means of connecting with the water, gas and sewage systems without going on the property which he neither owns nor controls. He has no control over the surrounding streets and sidewalks. Under the facts found, we think an easement was established in favor of plaintiff's property as to Lot 5, and as to the other easements declared by the judgment. The elements of continuity, appurtenance and nec-

essity each are present. See 58 A.L.R. 824; 17 Am.Jur. 914, Par. 77-81.

The easement as to Lot 5 passed to Hendrick on the conveyance to him of Lots 1, 2, 3, and 4. On October 6, 1934, Hendrick conveyed the east 90 feet of Lots 3 and 4 to Joe W. Rice and T. E. Neelly. Hendrick retained the remainder of Lots 1, 2, 3, and 4.

Plaintiff Yudin bought the east 90 feet of Lots 3 and 4 from Rice and Neelly on August 18, 1941. Subsequent to that date, defendant Fitz purchased Lot 5 and thereafter defendant Pokorny purchased the east 90 feet of Lots 1 and 2 and the west 50 feet of Lots 1, 2, 3, and 4. None of the deeds in the chain of title of any of the parties refers specifically to any easement.

As before stated, in our opinion when the owner of the five lots involved deeded to Hendrick Lots 1, 2, 3, and 4, there passed to him the easement established by the judgment on Lot 5. Further, that when Hendrick deeded to Rice and Neelly the east 90 feet of Lots 3 and 4, by fair implication the easements established by the judgment in favor of that tract of land passed to them and by their conveyance passed to Yudin. When defendant Fitz acquired Lot 5, it passed to him subject to the servitude created by its former owner.

Implied in the court's findings, we think is the finding that defendants each purchased with notice and so as to their predecessors in title.

The trial court also found in favor of plaintiff on the issue of prescription. In our opinion, the evidence is insufficient to sustain this finding, save perhaps as to the easement established against Lot 5. Until Rice conveyed to Hendrick Lots 1, 2, 3, and 4, there was a unitary ownership; until Hendrick conveyed to Rice and Neelly the east 90 feet of Lots 3 and 4 on October 6, 1934, there was a unitary ownership of Lots 1, 2, 3, and 4. The date for the filing of plaintiff's petition was September 14, 1944. As has been stated, in order to establish an easement by prescription, ten full years of adverse use is requisite. Martin v. Burr, 111 Tex. 57, 228 S.W. 543.

The trial court also found the easements established by the judgment were created by estoppel. In our opinion, the findings and evidence are insufficient to sustain the easements in this case by estoppel.

In one of the points of error, defendants urged that in case of an implied easement, it must be open, usable, and permanent and of such nature as does not require the act of man to perfect or indicate its use. In support of the point are cited the cases of Howell v. Estes, 71 Tex. 690, 12 S.W. 62; West v. Giesen, Tex.Civ.App., 242 S.W. 312; and West v. Probst, Tex. Com.App., 6 S.W.2d 96. These cases established the proposition asserted, but not that the easements declared and protected did not have the qualities requisite. An easement is a servitude on the servient estate in favor of the dominant estate. The only duty it imposes upon the owner of the servient estate is negative. Such owner must not interfere with the enjoyment of the easement. It certainly did not require the act of man to indicate the uses made and to be made of these easements. Their enjoyment required no affirmative act on the part of the owner of the servient estate.

An easement in favor of land gives no exclusive dominant right over the servient land unnecessary to the enjoyment of such easement. The dominant owner must make a reasonable use of the right so as to not unreasonably interfere with the property rights of the owner of the servient estate. This applies to either maintenance or use. In the light of these principles, the judgment of the trial court establishing these easements and protecting same is to be construed. 17 Am.Jur. 1003, Par. 108; Magnolia Pipeline Co. v. McCarter, Tex.Civ.App., 52 S.W.2d 663.

Complaint is made as to the admission of some of the testimony of witness Joe Rice. Rice testified over the objection of defendant that before the time he purchased the east 90 feet of Lots 3 and 4, he had conversation with the agent of Hendrick, in substance and effect that the passageway between the buildings would be left open, that the agent assured him it would and so promised. An easement can not, of course, be created by parol. It was not here created by estoppel. However, there is ample evidence to sustain the findings of the trial court without consideration of this testimony. It has no bearing on any of the grounds upon which the judgment of the trial court is here sustained. There is no reversible error in the case and the judgment of the trial court is affirmed.