**WESSELS et al. v. RIO BRAVO OIL CO. et al.**

No. 2925.

Court of Civil Appeals of Texas.
Eastland.

June 27, 1952.

Rehearing Denied July 19, 1952.

Jay R. Jameson, Frank E. Smith, Smith, Eplen & Bickley, Abilene, C. C. Renfro, Dallas, for appellants.

Thompson, Knight, Wright, Weisberg & Simmons, Dallas, for appellee.

GRISSOM, Chief Justice.

Pete J. Wessels and wife and C. C. McRorey sued Rio Bravo Oil Company, D. D. Feldman, C. L. Pardo and Franklin Life Insurance Company in trespass to try title to the minerals in a half section of land. Plaintiffs pleaded the three, five, ten and twenty-five years statutes of limitation and alleged they purchased the minerals in good faith, without notice that they had been reserved, and for a valuable consideration. Defendants, other than the insurance company, answered by a general denial and a plea of not guilty, and pleaded the three, five and ten years statutes of limitation. The insurance company answered that it held a lien executed by the Wessels and prayed that it be recognized against the interest decreed to them.

In a trial to the court, judgment was rendered for all defendants, except the in-

surance company. The court held that the sale of said land to E. H. Hittson, plaintiffs' predecessor in title, was subject to a reservation of the minerals contained in a contract, executed June 3, 1882, between the Houston and Texas Central Railway Company and E. H. Hittson. The Wessels, McRorey and the insurance company have appealed.

The primary issue to be decided is whether the recitals in a deed from the railway company to E. H. Hittson, his heirs and assigns, were sufficient to put plaintiffs and their predecessors in title on notice of the mineral reservation.

In 1870, the railway company mortgaged said land. On June 3, 1882, the railway company entered into a contract wherein the railway company, in consideration of $213.34 paid and the execution by E. H. Hittson of two notes for $213.33 each, sold to E. H. Hittson a half section of land, reserving the minerals. The railway company agreed therein that upon payment of said notes it would execute a special warranty deed to Hittson, or his "heirs or assigns," but that the railway company would reserve the minerals, as it had in said contract. See Rio Bravo Oil Co. v. McEntire, 128 Tex. 124, 95 S.W.2d 381, 388, Syl. 7. This contract was not recorded until October 28, 1929.

E. H. Hittson died in 1882. On August 3, 1885, N. S. Easton, et al., duly authorized trustees, executed a deed to said land to E. H. Hittson, "his heirs and assigns." The deed acknowledged payment of said notes. It contained the following recital:

"*Whereas, the said Houston & Texas Central Railway Company has heretofore made, executed and delivered to the said party of the second part (E. H. Hittson) an instrument in writing, dated the third day of June 1882 and numbered 30c contracting to convey, or purporting to convey, the lands hereinafter described at $2.00 per acre,* $\frac{}{100}$ *amounting to a sum of 640.00 Dollars,* $\frac{}{100}$ *to be fully and punctually paid as in said instrument provided . . .*"

This was followed by a statement that said notes had been paid and that under certain orders of court it was provided that, if said trustees should "elect to ratify the said sale," they should deliver to the receivers a deed to the purchaser and the receiver should deliver it to the purchaser. The deed continued: "Now this indenture, Witnesseth: That the said parties of the first part *electing to consummate said transaction and make such sale * * *"* did sell unto E. H. Hittson, "his heirs and assigns," all the right, title, interest, estate and property of said trustees in said described tract "*excepting and reserving herefrom all the exceptions and reservations contained in the said instrument so made by the said Railway Company,* the said party of the second part agreeing by acceptance hereof to perform all the covenants upon him imposed thereby, *as fully as if all of the same were textually inserted herein.* To have and to hold all and singular the premises above mentioned unto the said party of the second part, his heirs and assigns forever, *subject to* any and *all* encumbrances, if any there be, on the said land and to the *exceptions, reservations and agreements,* (if any) *in said instrument contained.*"

This deed was recorded in June, 1889. (The emphasis and the names in brackets throughout the opinion are the court's).

The receiver for the railway company, in April 1889, executed a release, reciting that "*whereas, on the 3rd day of June, 1882, E. H. Hittson, executed to the Houston & Texas Central Railway Company two certain promissory notes* for Two Hundred Thirty Three 33/100 (233.33 Dollars each $\frac{}{100}$ in part payment for 320 acres of land, more or less . . . *described in a contract of even date with said notes executed by the Houston & Texas Central Railway Company to said E. H. Hittson*" in which a lien was retained to secure the payment of said notes and that, said notes having been paid, the lien was released. The release was recorded in June, 1889.

When E. H. Hittson died in 1882, his land was inherited by his brother W. H.

Hittson, and a sister, Mrs. Brower. The interest of E. H. Hittson in said land was partitioned to W. H. Hittson, the sister executed a deed conveying her interest to him, and he agreed therein to pay the railway company the balance of the purchase money. Whatever interest was conveyed by the railway company in 1885, to E. H. Hittson, his heirs and assigns, was, by regular and unbroken chain of title conveyed to the plaintiffs. W. H. Hittson executed a quitclaim deed thereto to John R. Joyce in 1905. The minerals reserved by the railway company in said contract of 1882 between the railway company and E. H. Hittson, referred to in the 1885 deed, were, by regular and unbroken chain of title, conveyed to defendants, unless the minerals were acquired by plaintiffs, or their predecessors, as innocent purchasers or by limitation. See Rio Bravo Oil Co. v. McEntire, 128 Tex. 124, 95 S.W.2d 381, 388.

In 1944, Rio Bravo Oil Company conveyed an interest in the minerals to D. D. Feldman and C. L. Pardo. There was evidence that since 1918, when Rio Bravo acquired the minerals, until the conveyance to Feldman and Pardo it had always claimed to own all the minerals. It still retains an interest therein. It was admitted that no oil, gas or other minerals have been mined or produced and no wells or mines have been drilled or opened on said land. In the judgment, the court found the sale of said land was subject to the reservation of the minerals in the contract of June, 1882; that all minerals have been, by regular chain of title, conveyed by said railway company, its successors and assigns, and they are now owned by defendants, Rio Bravo Oil Company, D. D. Feldman and C. L. Pardo.

Plaintiffs contend that they and their predecessors in title acquired the minerals through the deed to E. H. Hittson, dated August 3, 1885, notwithstanding said deed contained said reference to the mineral reservation in the contract of 1882. The minerals being excepted, Hittson and his heirs acquired none. Lemar v. Garner, 121 Tex. 502, 50 S.W.2d 769. Plaintiffs say that said references in the deed to the contract containing the mineral reservation were insufficient to put an ordinary prudent purchaser on inquiry as to said reservation, and, further, that plaintiffs and their predecessors, having no notice of said mineral reservation and having peacefully and adversely possessed said land, "including all the minerals," for the time required by the statutes of limitation prior to the recording of said contract, acquired full title to the minerals as well as the surface.

We conclude that the references in the deed to the contract were sufficient to put an ordinary prudent purchaser on inquiry and, therefore, that plaintiffs must be treated as if they had pursued said inquiry and ascertained the facts shown in the contract. Therefore, plaintiffs, who claim the minerals through said deed, are not innocent purchasers of the minerals.

"The general doctrine is, that whatever puts a party upon an inquiry amounts, in judgment of law, to notice, provided the inquiry becomes a duty, as in the case of purchasers and creditors, and would lead to the knowledge of the requisite fact, by the exercise of ordinary diligence and understanding." Wethered's Adm'r v. Boon, 17 Tex. 143, 150.

"A purchaser is charged with and bound by every recital, reference and reservation contained in or fairly disclosed by any instrument which forms an essential link in the chain of title under which he claims." 43 Tex.Jur., 647, 650. See also 55 Am.Jur., 1081; Myers v. Crenshaw, Tex.Civ.App., 116 S.W.2d 1125, 1130, affirmed 134 Tex. 500, 137 S.W.2d 7; King v. Summerville, Tex.Civ.App., 80 S.W. 1050, 1052, affirmed, 98 Tex. 332, 83 S.W. 680.

In the 1885 deed to E. H. Hittson and his heirs, which is an essential link in plaintiffs' chain of title, there was a recital of a reservation and exception as shown by the written contract of 1882 which, if investigated, would have clearly revealed the mineral reservation by the railway company. It was the duty of the purchaser to make investigation and he is charged with the knowledge that reading said contract would have imparted.

In the deed from his sister, W. H. Hittson agreed to pay the purchase money notes executed by E. H. Hittson. When he paid the notes the deed was executed and delivered, presumably, to W. H. Hittson. Although the deed is made to E. H. Hittson and his heirs and assigns, it is evident that the parties intended the conveyance should be to and for the benefit of E. H. Hittson's heirs. The railway company is bound to have known that E. H. Hittson was dead and that W. H. Hittson had paid the purchase money notes. The only other heir gave W. H. Hittson a deed conveying her inherited interest in the land. But, even if said deed should be held inoperative because of the prior death of E. H. Hittson, it was effectively ratified and adopted by plaintiffs and their predecessors in title by claiming title to the minerals through it. Reserve Petroleum Co. v. Hodge, 147 Tex. 115, 213 S.W.2d 456, 458, 7 A.L.R.2d 288; Grissom v. Anderson, 125 Tex. 26, 79 S.W.2d 619, 623; Greene v. White, 137 Tex. 361, 153 S.W.2d 575, 587, 136 A.L.R. 626, 639.

It is difficult to understand how plaintiffs can claim title to the minerals through said deed and at the same time assert it is void as to the mineral reservation referred to therein. We conclude (1) that the effect of the 1885 deed was to convey title to the surface only to the heirs of E. H. Hittson; (2) but, if inoperative because E. H. Hittson was dead, that plaintiffs and their predecessors in title have ratified and adopted it and cannot assert the invalidity of that part of the deed, under which they claim, which gives notice of the mineral reservation.

It cannot be held that plaintiffs, as a matter of law, established title by limitation to the minerals. By virtue of the contract of 1882, which then reserved the minerals, and the 1885 deed to the surface, the railway company effectively severed the minerals from the surface and they, thereupon, became separate and distinct estates. After such severance, of which the plaintiffs and their predecessors were put on notice by references in the 1885 deed through which they claim, the posses-

sion of the surface by those claiming under said deed did not constitute possession of the minerals, and their possession was, therefore, not adverse to the owners of the minerals under a conveyance thereof by the railway company. Talley v. Howsley, 142 Tex. 81, 176 S.W.2d 158, 159; Grissom v. Anderson, 125 Tex. 26, 79 S.W.2d 619, 621; Elliott v. Nelson, 113 Tex. 62, 251 S.W. 501, 504; Hager v. Stakes, 116 Tex. 453, 294 S.W. 835, 842.

The judgment is affirmed.