Earl STOWE, et al., Appellants,

v.

Ione HEAD, et al., Appellees.

No. 12–86–0026–CV.

Court of Appeals of Texas, Tyler.

March 30, 1987.

---

Gus E. Meriwether, J.B. Sallas, Sallas, Meriwether & Pemberton, Crockett, for appellants.

Claude C. Roberts, Butler & Binion, Houston, James W. Turner, Turner & Durrance, Crockett, for appellees.

COLLEY, Justice.

This is a suit in which the plaintiffs sought construction and/or reformation of a deed to lands in Houston County. The trial court disregarded certain jury findings and rendered a take-nothing judgment against Earl Stowe, Douglas Harrison, and Eugene Harrison, plaintiffs/appellants, in favor of Ione Head, Wm. D. Denny, Jr., Shelley Dominy, and Geneva Carroll, defendants/appellees. We affirm in part, and reverse and render in part.

The record reveals the following undisputed facts. On November 30, 1967, appellees and others, as the sole joint owners of 1166.48 acres of land on the John Moore League in Houston County, executed a partition deed effecting a division of the "surface" estate of said lands. Under the terms of the partition deed, appellees' predecessor in title [1] was awarded as her share and portion of such lands, a certain

1. Ione Lundy LeGory, who was at that time a person of unsound mind subject to a guardianship of her estate, wherein J.L. Burton was acting as guardian.

290.85 acre tract, as well as an undivided one-half interest in an adjacent 3.22 acre tract given to provide LeGory with access to the 290.85 acre tract from a public road. The provisions of the partition deed recited that "[a]ll oil, gas and other minerals" underlying the 1166.48 acres were excepted from the partition. Additionally, all merchantable pine timber standing and growing on said acreage was excepted for a two-year period.

Mrs. LeGory died testate on June 30, 1971. Her will was admitted to probate and recorded on July 19, 1971. By the terms of her will, Mrs. LeGory appointed Wm. Denny and J.L. Burton (formerly the guardian of her estate) joint independent executors. However, Burton alone qualified to act in such capacity. On January 21, 1972, Burton, acting in his capacity as independent executor, executed a warranty deed as grantor in favor of appellants as grantees, purporting to convey the 290.85 acre tract. The deed recited that "the timber standing and growing upon the above described land has been conveyed to Stowe Lumber Company, Inc." but contained no reservation or exception of the minerals underlying the tract described in the conveyance. The 290.85 acres was described by metes and bounds in the deed, and immediately following the description, the deed recites, "and being the tract set apart to J.L. Burton, Guardian, in a partition between Robert L. King, Sr., et al., dated November 30, 1967, now appearing of record in Book 433, page 576 of the Deed Records of Houston County, Texas." As already indicated, the deed contained a covenant of general warranty.

**2.** Appellants alleged an oral agreement between them and Burton that the deed dated January 21, 1972, would cover and convey "all of the interest of the Estate of Ione Lundy LeGory, Deceased, in and to the 1166.48 acres." Other than the timber, including, however, the one-half undivided interest in the 3.22 acre tract (which is, in fact, a part of the 1166.48 acre tract) but as appellees alleged, the 1972 conveyance because of a mutual mistake of the parties to the same "failed to include a specific description ... [of the] 3.22 acres and the undivided one-fourth (¼) interest in and to the oil, gas and other minerals ... to be embodied within the conveyance."

## JURY ISSUES AND FINDINGS

The court submitted five special issues to the jury relating to an alleged[2] mutual mistake of the parties. Special Issue 1 inquired whether the parties had an agreement before the deed was signed that Burton was "to sell and convey to Plaintiffs the undivided one-half interest in the surface estate of the 3.22 acres." The jury answered this issue, "Yes," but answered Special Issue 2, inquiring whether the failure to include this interest in the deed was the result of a mutual mistake, "No." Special Issues 3 and 4 inquired whether the parties had an agreement whereby the executor was to sell and convey the undivided one-fourth interest in the "oil, gas and other minerals in, on and under the 1166.48 acres," and whether the failure to include such mineral interest in the deed was the result of a mutual mistake. The jury answered both of these issues "Yes." Special Issue 5 inquires whether one or more of the plaintiffs "knew of, or should have discovered in the exercise of reasonable diligence, the mistake more than four years prior to [the filing of the suit]."[3] The jury answered, "No."

## TRIAL COURT JUDGMENT

The trial judge held, and the judgment expressly recites, that both the partition deed and appellants' deed were clear and unambiguous; that appellants' deed (unreformed) conveyed no interest in the oil, gas, and minerals underlying the 290.85 acres or the remainder of the 1166.48 acres; that appellants' deed conveyed no interest in the 3.22 acre tract; and that appellants were,

**3.** The issue as framed, improperly placed the burden of proof on appellees. *Smith v. Knight,* 598 S.W.2d 720, 721 (Tex.Civ.App.—Fort Worth 1980, writ ref'd n.r.e.) (by *per curiam* opinion, 608 S.W.2d 165, 166 (Tex.1980) see n. 2); *Weaver v. Witt,* 561 S.W.2d 792, 794 (Tex.1977); *Wise v. Anderson,* 163 Tex. 608, 359 S.W.2d 876, 880 (1962); *National Resort Communities v. Short,* 712 S.W.2d 200, 201–202 (Tex.App.—Austin 1986, writ ref'd n.r.e.). However, appellees lodged no objection to the submission of the issue, and thus waived the error.

as a matter of law, "charged with notice and knowledge of the mistake alleged" on a date more than four years prior to the filing of this suit. The trial court, in express disregard of the jury's answers to Special Issues 1, 3, 4, and 5, held that appellants' reformation action was barred by the four-year statute of limitations, and also expressly denied appellants' petition for a declaratory judgment that the deed conveyed, in addition to the surface interest in the 290.85 acres, an undivided one-half interest in the 3.22 acres or an undivided one-fourth interest of the oil, gas, and other minerals underlying the 1166.48 acres. The judgment contains a declaration "that notwithstanding the verdict of the jury in answer to Special Issues Nos. 1, 3, 4, and 5 ... that [appellants] take nothing by their suit."

Appellants assert five points of error. By their first point, they contend the trial court erred in sustaining appellees' motion for judgment, and in disregarding the jury's *negative answer* to Special Issue 5, because "there is evidence to support the jury's finding in answer thereto." In their second point of error, appellants argue that the court "erred in holding that the [appellants] were charged as a matter of law with notice and knowledge of the mistake alleged by [them]" at a time more than four years before the date[4] this suit was filed by appellants, contending that a fact issue existed as to the date when appellees first learned of the mutual mistake or in the exercise of reasonable diligence should have discovered the same. Appellants argue that the jury's negative finding to Special Issue 5 resolved that fact issue in their favor. Appellants claim by their third point of error that the trial court erred in denying their motion to disregard the jury's negative answer to Special Issue 2 because the evidence conclusively establishes that the one-half interest in the 3.22 acre tract (surface only) constitutes an easement appurtenant to the 290.85 acres. Appellants allege by their fourth point of error that the trial court erroneously construed Burton's deed to them as a conveyance of "only the surface title to the 290.85 acre tract." Finally, appellants contend that the trial court erred in concluding that the deed from Burton, when read along with the partition deed, conveyed only the "surface" of the 290.85 acres. From appellants' argument under the point, we understand that appellants claim the deed from Burton conveyed in addition to the surface, at least one-fourth of the oil, gas, and minerals underlying the 290.85 acre tract because no express reservation or exception of minerals is set forth in the deed.

Appellees, in response to appellants' arguments, contend: (1) that Burton's deed to appellants was unambiguous, and since it referred to the partition deed which awarded a surface interest only to LeGory, Burton's deed conveyed only the surface interest in the 290.85 acres, notwithstanding the fact that the deed contained no reservation or exception of oil, gas, and other minerals; (2) that appellants were charged by law with knowledge (notice) that Burton's deed conveyed no mineral interest in the three tracts awarded to the other cotenants in the partition; and that said notice was imparted to appellants on a date more than four years before the filing of this suit, hence the reformation remedy is barred by the four-year statute of limitations; and (3) that since appellants did not carry their burden of proof to overcome the legal presumption that they had notice that Burton's deed conveyed no minerals, the four-year statute of limitations bars that remedy. Appellees also argue that there is *no evidence* to support the jury's answer to Special Issue 5.

We now address appellants' points one and two. Under these points appellants argue that the question of whether they had actual notice of the "mistake alleged," or in the exercise of reasonable diligence should have discovered the "mistake" at a date more than four years before the suit was filed on May 27, 1981, is a fact question which was resolved in their favor by the jury's answer to Special Issue 5, which finding is supported by the evidence. Therefore, appellants contend the court

---

**4.** Appellees filed their original petition on May 27, 1981.

erred in disregarding the jury's answer to the issue and rendering a judgment denying the reformation of the deed. Appellants during the course of their argument under the points cite, *inter alia, Sullivan v. Barnett,* 471 S.W.2d 39 (Tex.1971); *McClung v. Lawrence,* 430 S.W.2d 179 (Tex.1968); *Miles v. Martin,* 159 Tex. 336, 321 S.W.2d 62 (1959); *Gilmore v. O'Neil,* 107 Tex. 18, 173 S.W. 203 (1915). An analysis of these authorities [5] was made by the Supreme Court in *Brown v. Havard,* 593 S.W.2d 939 (Tex.1980). The mistake at issue in *Brown* arose out of an *ambiguous reservation* of a royalty interest contained in the deed from Brown to Havard's immediate predecessor in title. The *Brown* court fairly summed up the rule enunciated by the above-cited authorities to be, that while the four-year statute of limitations (former Tex.Rev.Civ.Stat.Ann. art. 5529) [6] is applicable to suits seeking reformation of instruments, the statute does not begin to run until the mistake is, or in the exercise of reasonable diligence, should have been discovered. Such is unquestionably the rule in Texas. However, none of the cases noted above, or the authorities cited by the Supreme Court in *Sullivan,* 471 S.W.2d at 45–47 in support of its opinion, involved a mistake which was *clearly disclosed* by an instrument in the grantees' chain of title. The recorded partition deed in this case was an essential link in appellants' chain of title to the 290.85 acres. Because it was, appellants were charged with constructive notice of the recitations, references, and exceptions contained in the partition deed. As held in *Wessels v. Rio Bravo Oil Co.,* 250 S.W.2d 668 (Tex.Civ. App.—Eastland 1952, writ ref'd), a grantee is charged with constructive notice of each "recital, reference and reservations contained in ... any instrument which forms an essential link in the chain of title under which [they claim]." *Id.* at 670. This holding was reaffirmed by the Supreme Court in *Westland Oil Development Corp. v. Gulf Oil,* 637 S.W.2d 903, 908 (Tex.1982).

This rule was explained in *Loomis v. Cobb,* 159 S.W. 305 (Tex.Civ.App.—El Paso 1913, writ ref'd), as follows:

> The rationale of the rule is that any description, recital of fact, or reference to other documents puts the purchaser upon inquiry, and he is bound to follow up this inquiry, step by step, from one discovery to another and from one instrument to another, until the whole series of title deeds is exhausted and a complete knowledge of all the matters referred to and affecting the estate is obtained.

159 S.W. at 307.

The above quotation from *Loomis* was likewise approved in *Westland,* 637 S.W.2d at 908. The *Westland* court, after noting this rule, held as a matter of law that a reference to an *unrecorded operating agreement* made in an assignment to Gulf charged Gulf with a duty to read the operating agreement, thereby charging Gulf with actual notice of the contents of that operating agreement. *Id.* at 908; *see also Cooksey v. Sinder,* 682 S.W.2d 252, 253 (Tex.1984). In *Sherman v. Sipper,* 137 Tex. 85, 152 S.W.2d 319 (1941), the plaintiffs Sipper brought an action to rescind a contract between them and the defendant Sherman, and to cancel deeds involved in an exchange of land between the parties, on the ground of fraud and misrepresentation. Sipper alleged, and the jury found, that Sherman had represented that he had a "clear title" to the land he conveyed to Sipper. However, a remote grantor in Sherman's chain of title had previously reserved all minerals in the land Sherman conveyed to Sipper. The jury also found that Sipper did not have actual notice of the title defect until a short time before the suit was filed. On this verdict, the trial court rendered a judgment for Sipper cancelling both deeds. The Court of Civil Appeals affirmed the judgment. The Supreme Court reversed the judgments below and rendered judgment in favor of Sherman, holding the suit was barred by the

---

**5.** Other than *Gilmore v. O'Neil.*

**6.** Texas Revised Civil Statutes 1925, repealed Act of June 16, 1985, ch. 959, § 9, 1985 Tex.Gen. Laws 3242, 3322 (now codified as Tex.Civ.Prac.

and Rem.Code § 16.051 (Vernon 1986). Hereafter referred to as the four-year statute of limitations.

four-year statute of limitations. In reaching its decision, the Court noted the rule in fraud cases that the running of the limitation statute is tolled until the fraud is, or by the exercise of reasonable diligence might have been discovered. But the Court also observed that after the deeds were signed and delivered, Sherman did not mislead Sipper by action or words as to the character of the title to the questioned land, nor in any wise prevent Sipper from inspecting the record title of Sherman's land. The court proceeded to hold that the Sippers were charged in law "with constructive notice of the actual knowledge they would have acquired if they had examined the records." *Sherman*, 152 S.W.2d at 321. A more definitive explanation perhaps of actual notice is found in *Hexter v. Pratt*, 10 S.W.2d 692, 693 (Tex.Comm'n App.1928, judgmt adopted). The court there stated:

> In common parlance 'actual notice' generally consists in express information of a fact, but in law the term is more comprehensive. In law whatever fairly puts a person on inquiry is sufficient notice, where the means of knowledge are at hand, which if pursued by the proper inquiry the full truth might have been ascertained. Means of knowledge with the duty of using them are in equity equivalent to knowledge itself. Where there is a duty of finding out and knowing, negligent ignorance has the same effect in law as actual knowledge. So that, in legal parlance, actual knowledge embraces those things of which the one sought to be charged has express information, and likewise those things which a reasonably diligent inquiry and exercise of the means of information at hand would have disclosed. Actual notice is always a question of fact. (citations omitted)
>
> Constructive notice is as effectual and binding as actual notice....
> Whatever brings to the party sought to be charged express information or fairly puts him upon inquiry, as we have seen, is actual notice of those facts which rea-

sonable use of the means at hand would have discovered....

*Id.* at 693–694; *see also Wise v. Anderson*, 163 Tex. 608, 359 S.W.2d 876, 879 (1962); *Flack v. First Nat. Bank of Dalhart*, 148 Tex. 495, 226 S.W.2d 628, 631–632 (1950).

The resolution of disputes in reformation suits based on mutual mistake depends on the facts and circumstances of each case. As Judge Norvell observed in *Clopton v. Cecil*, 234 S.W.2d 251, 254 (Tex.Civ.App.—San Antonio 1950, writ ref'd n.r.e.), such resolution rests on a consideration of "the nature of the mistake, [and] the action of the parties in dealing with the property after the mistake has occurred." In the case before us, although their pleadings stated otherwise,[7] the mistake here was the mistaken belief of appellants that the partition deed awarded to each cotenant of the 1166.48 acres, the oil, gas and other minerals underlying the tract awarded each cotenant. The evidence shows without dispute that appellants Douglas Harrison and Earl Stowe read the deed in question before it was signed and the sale of the 290.85 acres consummated. Each admitted actual knowledge of the existence of the partition deed in January 1972. The nature of the mistake is best illustrated by a portion of Eugene Harrison's testimony on cross-examination:

Q  All right, where do you conclude that you were getting some interest in 1100 acres below the ground?

A  That was the agreement we had.

Q  That isn't what the deed says, is it?

A  No, sir. It was the agreement, and I didn't know—*the deed didn't reserve any.*

Q  That was your understanding of the agreement?

A  Right. *It didn't matter how it was distributed as long as we got 290 acres.* (Emphasis added.)

█ Burton, who died before trial, testified by deposition. He testified that he had an agreement to sell to appellants all interest that Ione LeGory had in the "1200—or 1100 some odd acres." He also testified

---

that the attorney who drafted the deed made the mistake, and stated, "and I didn't catch it." It is therefore obvious that, in Burton's view, the mistake made was the failure to include in the deed, a granting clause conveying the one-fourth undivided interest in the oil, gas and other minerals underlying the four remaining tracts which together with the 290.85 acres comprise the 1166.48 acres. The differing perceptions of the nature of the mistake are understandable. On the date of the deed, Burton had express knowledge that the partition deed excepted the minerals; appellants did not, except as hereafter observed. The record discloses that after the deed was signed and delivered to appellants, appellees at no time took any action, or made any statement to prevent, or to discourage appellants from inspecting and reading the partition deed referred to in appellants' deed by date and specific book and page number in the Houston County Deed Records. As a matter of law, the partition was, and is an essential link in appellants' chain of title. Had appellants read the deed, they would have discovered the mutual mistake made, that is, a reading of that deed would have dispelled their mistaken belief that the minerals underlying the 1166.48 acres owned in common by the LeGory estate and the three other family groups were partitioned along with the surface of the lands awarded each cotenant. Applying the rule of *Wessell v. Rio Bravo Oil Company, supra; Westland Oil Development Corp. v. Gulf Oil, supra; Loomis v. Cobb, supra; Cooksey v. Sinder, supra;* and *Sherman v. Sipper, supra,* we conclude that appellants were charged with an absolute duty to read the partition deed, and after having done so, must be held to have had actual notice of the mutual mistake. They are presumed to have discovered the mistake on the date the deed was delivered to them on January 21, 1972, that is, the Ione LeGory estate owned only a one-fourth interest of the oil, gas and other minerals underlying the 290.85 acre tract described by metes and bounds in the deed from Burton, but owned as well an undivided one-fourth interest in and to the oil, gas and other minerals underlying the other tracts award-

ed their cotenants in the partition deed. This information reveals the real mistake in the drafting of the deed which then became plainly evident. The deed to them did not describe or purport to convey any mineral interest other than the grantors' interest in the 290.85 acres, a fact which the appellants admitted at trial. Thus, as of the date of the delivery of the deed from Burton to appellants on January 21, 1972, the appellants had, in law, actual notice of the mutual mistake. Since this suit was not filed until May 27, 1981, the four-year statute of limitations barred the reformation remedy sought. None of the cases cited and argued by appellants involved a mutual mistake discoverable by an examination of the unambiguous provisions of an instrument in the chain of title of the party seeking reformation, and hence are not applicable here. The trial court did not err in disregarding the jury's answers to Special Issues 3, 4, and 5 because the undisputed evidence shows as a matter of law that the appellants discovered the mutual mistake in 1972. *Eubanks v. Winn,* 420 S.W.2d 698, 701 (Tex.1967); *Bond v. Otis Elevator Co.,* 388 S.W.2d 681, 685 (Tex.1965); Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 Tex.L.Review 361 (1960). Points of error one and two are overruled.

■ Appellants by their third and fifth points contend that the trial court erred in denying their motion to disregard the jury's answers to Special Issue 2, and in holding that their deed conveyed only the surface estate in the 290.85 acres, and did not convey to appellants the one-half undivided interest in the "surface estate" of the 3.22 acre tract (tract five in the partition deed) adjacent to the 290.85 acres. We sustain these points. The deed from Burton to appellants of the 290.85 acre tract contains no reservation in favor of the grantor of any mineral interest. Thus the deed purports to convey the fee title (except for timber) to that tract. The deed also contains a covenant of general warranty. Hence the well-respected rule in *Duhig v. Peavy-Moore Lumber Co.,* 135 Tex. 503, 144 S.W.2d 878, 880 (1940), applies to the

facts before us. *See Klein v. Humble Oil & Refining Co.*, 67 S.W.2d 911, 914, 916 (Tex.Civ.App.—Beaumont 1934), *aff'd, Klein v. Humble Oil & Refining Co.*, 126 Tex. 450, 86 S.W.2d 1077, 1078 (1935). We reject appellees' contention that *Winters v. Slover*, 151 Tex. 485, 251 S.W.2d 726 (1952), and like cases control our decision here. Hence, we conclude that appellees are estopped from asserting a claim against appellants as to the ownership of any interest in the oil, gas and mineral estate in and to the 290.85 acres. We hold that the appellants acquired the mineral interest[8] of which Ione Lundy LeGory was seized and possessed in and to the 290.85 acres at the time of her death.

Turning now to a consideration of the questions raised by appellants' third point that their deed to the 290.85 acres also transferred to them the one-half undivided interest in the surface estate of the 3.22 acre tract described in the partition deed as "tract no. 5" as an easement appurtenant to the 290.85 acres. The partition deed contains the following recital, to wit: "Tract nos. 1 and 2 are not adjacent to any road and this Fifth Tract is set apart to them to furnish the owners of said tracts with access to a public road." J.L. Burton testified at trial that 290.85 acres did not abut a public road, and that the 3.22 acre tract was adjacent to that tract and a public road, providing the only access to the 290.85 acres from a public road. Our Supreme Court in *Drye v. Eagle Rock Ranch, Inc.*, 364 S.W.2d 196, 207 (Tex.1963), stated that before an easement appurtenant can be created by implication, "there must be a dominant estate and a servient estate. The easement attaches to the land of the dominant estate and not merely for the convenience of the owner thereof independent of the use of his land." In addition, the court noted that certain conditions must be met before the courts will consider that an easement appurtenant[9] arises. The use of the

servient estate must exist at the time of the conveyance, giving rise to the implied easement, e.g., "a road into or out of the granted area." *Drye*, 364 S.W.2d at 207. The use of the implied easement must be "continuous," that is, no further action by the grantor in respect to the use of the easement is required. The use of the easement must be necessary to the enjoyment of the estate granted, e.g., "a way to and from [a public road or other premises] the estate granted." *Drye*, 364 S.W.2d at 208. A more concise statement of the rule governing implied grants of an easement appurtenant is found in *Ulbricht v. Friedsam*, 159 Tex. 607, 325 S.W.2d 669, 676 (1959), to-wit:

> The correct rule of law ... is stated in 28 C.J.S., *Easements*, § 31, p. 687, et seq., as follows: 'Where the owner of an entire tract of land or of two or more adjoining parcels employs a part thereof so that one derives from the other a benefit or advantage of a continuous, permanent, and apparent nature, and sells the one in favor of which such quasi[10] easement exists, such easement, being necessary to the reasonable enjoyment of the property granted, will pass to the grantee by implication.'

*See also Mitchell v. Castellaw*, 151 Tex. 56, 246 S.W.2d 163, 167 (1952).

We conclude after due consideration of this record and the legal principles above noted, that an implied easement appurtenant arose in favor of appellants for the use of the 3.22 acres of land for the purposes of ingress and egress to and from the 290.85 acres to the public road abutting the 3.22 acres. This easement attached to the 290.85 acres and is permanent in character. It is, of course, limited to the undivided one-half interest in the surface estate of the 3.22 acres owned by LeGory at the time of her death. The implied grant of the easement conveys no oil, gas or other

---

**8.** Although no title documents were introduced establishing LaGory's title in the 290.85 acres, there seems to be no dispute that LaGory owned, at the time of her death, an undivided one-fourth interest of the oil, gas and other minerals underlying the entire 1166.48 acres.

**9.** *See Pokorny v. Yudin*, 188 S.W.2d 185, 193 (Tex.Civ.App.—El Paso 1945, no writ), and authorities therein cited.

**10.** Explained in *Drye v. Eagle Rock Ranch, Inc.*, 364 S.W.2d at 207.

mineral interest in the 3.22 acre tract. Appellants' point three is sustained to the extent indicated above.

Appellants by their fourth point reassert contentions already disposed of by our rulings on points one, two and five, and it is overruled.

We affirm those portions of the trial court's judgment denying reformation of the 1972 deed from Burton to the appellants; otherwise, the judgment is reversed and judgment is here rendered that the deed from J.L. Burton as independent executor of the estate of Ione Lundy LeGory as grantor, to appellants, Earl Stowe, Douglas Harrison, and Eugene Harrison, as grantees, dated January 21, 1972, and duly recorded in Book 496, Page 226 of the Houston County Deed Records, conveyed to the appellants, in addition to the surface interest in the 290.85 acres of the John Moore League in Houston County, described by metes and bounds therein, an undivided one-fourth interest in and to all oil, gas and all other minerals underlying the 290.85 acres, as well as an easement and right-of-way over and across the surface of the 3.22 acres on the John Moore League, described as Tract No. 5 in the partition deed for the purposes of ingress and egress to and from a public road to the 290.85 acre tract, and it is so decreed.

It is ordered that the costs incurred in the trial court and in this court are assessed one-fourth against appellees and three-fourths against appellants.